IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **PLANETSPACE, INC.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 09-476 C |
| | ) | (Judge Lawrence J. Block) |
| **THE UNITED STATES OF AMERICA,** | ) | |
| | ) | BID PROTEST |
| Defendant, | ) | |
| | ) | |
| **SPACE EXPLORATION** | ) | |
| **TECHNOLOGIES CORPORATION,** | ) | |
| | ) | |
| Intervenor, and | ) | |
| | ) | |
| **ORBITAL SCIENCE CORPORATION,** | ) | |
| | ) | |
| Intervenor. | ) | |

### DEFENDANT'S MOTION TO STRIKE

Pursuant to Rules 7 and 52.1 of the Rules of the United States Court of Federal Claims, defendant, the United States, respectfully requests that the Court strike the declarations of Michael Bowker and John Michael Lounge, and sections III, IV, and V of the declaration of Dr. Chirinjeev Kathuria, that were submitted with the brief supporting Plaintiff's Motion for Judgment on the Administrative Record and for Permanent Injunctive Relief ("Pl. Br."), dated August 28, 2009.

Although these declarations purport to be made in support of PlanetSpace's "irreparable injury" and "public interest" arguments, a closer inspection reveals that they are largely dedicated to introducing facts outside the record, and re-arguing the merits of NASA's contracting decisions. Indeed, apart from its arguments relating to public interest and harm, PlanetSpace cites to these declarations no fewer than 21 times in the merits of its brief – including 16 citations in its statement of facts. See Pl. Br. at 2, 6, 7, 8, 9, 19, 27, 28, 29, 35.

These declarations include statements of purported fact and opinion that (1) were not before the contracting agency, (2) describe events after contract award, and (3) include the opinions, arguments, and conjecture of PlanetSpace employees and consultants that, at best, amount to their personal disagreement with NASA's contracting judgments. The Court should strike these declarations because, even if true, they are irrelevant to the Court's assessment of whether NASA's contract awards were reasonable and lawful.

PlanetSpace's introduction of, and reliance upon, these declarations is starkly at odds with the law of this Circuit. The United States Court of Appeals for the Federal Circuit recently confirmed that this Court's review of an agency's contracting decision is to be limited to "the administrative record already in existence, not some new record made initially in the reviewing court." Axiom Resource Management, Inc. v. United States, 564 F.3d 1374, 1379 (2009) ("Axiom") (quoting Camp v. Pitts, 411 U.S. 138, 142 (1973)). PlanetSpace's efforts to introduce into argument these extraneous, *ex-post* opinions belies this admonition. Thus, we respectfully request that the Court strike these declarations, as well as those portions of PlanetSpace's brief that rely upon them.

I.    **Rule 52.1**

When the Court of Federal Claims undertakes a judgment upon the Administrative Record, pursuant to RCFC 52.1, the scope of its review is limited: the Court must make "factual findings under RCFC 52.1 from the [limited] record evidence as if it were conducting a trial on the record." Bannum, Inc. v. United States, 404 F.3d 1346, 1357 (Fed. Cir. 2005). As this Court

observed when discussing Bannum and Rule 52.1,[1] the purpose of this limitation is prophylactic: "in order to apply this standard properly, [a court] must exercise restraint in examining information that was not available to the agency. A failure to do so risks converting arbitrary and capricious review into a subtle form of *de novo* review." Arinc Eng'g Servs. LLC v. United States, 77 Fed. Cl. 196, 200-01 (2007).

It is settled law that the materials to be considered by the Court when engaged in a "record review" are those before the decision-making authority at the time of its decision: "[t]he task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court." Florida Power & Light v. Lorion, 470 U.S. 729, 743-44 (1985) (citing Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402 (1971)). Accordingly, in a bid protest, judicial review is generally limited to "the administrative record already in existence, not some new record made initially in the reviewing court." Axiom, 564 F.3d at 1379 (quoting Camp, 411 U.S. at 142); see also L-3 Communications EOTech, Inc. v. United States, 2009 U.S. Claims LEXIS 242, *50 (2009) (no "unfettered right to submit declarations giving its commentary on every aspect of the … process, and to have those declarations included in the administrative record[.]"). Extra-record or *ex-post* facts and opinions are not relevant to the Court's inquiry. See, e.g., Emerald Coast Finest Produce, Inc. v. United States, 76 Fed. Cl. 445, 448-49 (2007) (refusing to add to the record declarations not considered by the agency when making its award decision).

---

[1] In 2006, this Court amended its rules governing bid protests to Rule 52.1 in order to reflect the reasoning of Bannum. RCFC 52.1, Rules Committee Note (June 20, 2006).

**II.     *Axiom* and *Ex-Post* Declarations**

The Federal Circuit recently made clear that this prohibition against extra-record evidence applies with equal force when these statements are presented through a protestor's declarations. In Axiom, the protestor presented arguments based upon statements made in the declarations of four company employees and consultants. Axiom Resource Management, Inc. v. United States, 78 Fed. Cl. 576, 585-86 (2007) ("Axiom I"). These declarations included statements of fact and opinion expressing the declarants' (1) personal views on how agency components functioned and interacted, (2) projections of future events, and (3) personal opinions of why they believed the contracting agency erred in its judgment. See, e.g., id. at 591 (consultants opining upon the consequences that would attend the contract being administered by the winning bidder); 596-97 (consultants disagreed with the agency on how the contract would be administered); 597-98 (consultants disagreed with the agency's assessment that the Organizational Conflict of Interest at issue was adequately mitigated); see also Axiom Resource Management, Inc. v. United States, 80 Fed. Cl. 530, 538 (2007) ("Axiom II") (same). Over the Government's objection, the Court relied upon these declarations in its opinions, and based upon this information, enjoined the contract award. Axiom I, 78 Fed. Cl. at 599-600; Axiom II, 80 Fed. Cl. at 538-39 (adopting consultants' understanding of the manner in which the contract would be administered).

The Government appealed the Court's decision, arguing, among other things, that this Court "violated established principles of administrative law by permitting Axiom to supplement the record with affidavits created for litigation and then extensively relying on those affidavits to support its decision." Axiom, 564 F.3d at 1378. The Federal Circuit agreed, and explained that "the trial court abused its discretion in this case by adding Axiom's documents to the record

without evaluating whether the record before the agency was sufficient to permit meaningful judicial review." Id. at 1380.  It asserted that, in a bid protest, this Court's review should be focused upon "the administrative record already in existence, not some new record made initially in the reviewing court." Id. at 1379 (quoting Camp, 411 U.S. at 142).  Further, as to the merits, the Federal Circuit held that this Court erred by relying upon information not before the contracting agency.  It focused squarely upon the agency's description of facts and its corresponding analysis:

> we note that the [agency] reviewed the OCI Mitigation Plan and
> comparative analysis submitted by Lockheed and determined that
> the processes and procedures described therein would be sufficient
> to mitigate the alleged conflicts. We see nothing unreasonable
> about that determination.

Id. at 1383.  Accordingly, the court reversed the lower court's order enjoining the contract award.

### III.   The Declarations Of PlanetSpace's Employees And Consultants, Which Offer Extra-Record, *Ex-Post* Opinions, Projections, Purported Facts, And Arguments, Are Irrelevant And Should Be Stricken

Although PlanetSpace is obviously aware of the Federal Circuit's decision in Axiom, Pl. Br. at 11, it nonetheless seeks to introduce into this proceeding opinions, projections, purported facts, and arguments that were not before NASA at the time of contract award, from PlanetSpace employees and consultants who played no role in NASA's contracting decisions.  Importantly, PlanetSpace relies upon these *ex-cathedra* opinions not to sustain its arguments relating to "public interest" and "harm," but in support of its arguments on the merits of NASA's contracting decision.  See, e.g., Pl. Br. at 19 (citation to Kathuria Declaration for his opinion on pricing); 27-28 (citations to Bowker Declaration to introduce hearsay about the place of manufacture of certain rocket components).

5

### A.     Declaration of Michael Bowker

Mr. Bowker is the principal of a consulting company who "participated significantly in the preparation of PlanetSpace's bid proposal[,]" and who would be the Chief Operating Officer of PlanetSpace if it were awarded this contract. Bowker Decl. ¶ 4. Mr. Bowker played no role in NASA's decision-making process leading up to contract award. His declaration was created solely for this litigation, and was not considered by NASA when awarding the contracts at issue.

Mr. Bowker asserts that his declaration relates to "certain 'public interest' issues that may be relevant to PlanetSpace's bid protest." Id. ¶ 1. However, of the 79 paragraphs in his declaration, only one discusses a connection to a "public interest."[2] Indeed, even a casual reading of his declaration reveals that it is devoted wholly to offering personal opinions and arguments relating to the merits of PlanetSpace's bid proposal – i.e., that "PlanetSpace's first mission is likely to occur before either of the winning bidders' first missions." Id. ¶ 12. This is further demonstrated by the fact that PlanetSpace relies upon his declaration primarily to support the merits of its argument: it cites to Mr. Bowker's declaration 19 times in its statement of facts. See, e.g., Pl. Br. 6, 7, 8. By contrast, PlanetSpace's "public interest" discussion cites to Mr. Bowker's declaration only for his speculation about "developments since the award." Id. at 40.

Mr. Bowker's declaration seeks to introduce opinions that are outside of the existing record, that were not considered by the contracting agency prior to award, and that are irrelevant to this Court's inquiry. They include:

---

[2]     Paragraph 11 offers the broad-stroke assertion that the successful bidders "have experienced additional problems that bear on timely performance of ISS resupply missions, and hence, the public interest." This demonstrates a misunderstanding of the "public interest" showing required for injunctive relief, imagining a standard wherein a self-serving statement by the protestor that it could perform the contract better than the awardee would satisfy the requisite.

- his personal opinions that PlanetSpace "will be able to meet a schedule substantially similar to the one it originally proposed to NASA in response to [the RFP,]" ¶¶ 13-14;

- his speculation that, "after reviewing public information related to their performance on these contracts, and consulting other industry sources, . . . the current ISS CRS contractors are likely to miss their milestones as proposed on the ISS CRS[,]" ¶ 54; and

- charts and time-lines that are purportedly based upon data created several months after contract award.  ¶¶ 55, 72.

Apart from being outside the record, Mr. Bowker's estimates of PlanetSpace's future performance assume an extraordinary confluence of events, and a completion schedule that far exceeds PlanetSpace's own most optimistic projections.  He assumes that if PlanetSpace were to begin contract performance nine months after the contract was first awarded, "the resulting first mission date would be only three (3) months later than if PlanetSpace had originally been awarded the contract."  Id. ¶ 12.  In short, Mr. Bowker declares that PlanetSpace would complete its work toward the first mission six months faster than PlanetSpace itself projected when it submitted its bid.  Even if Mr. Bowker's *ex-post* declaration was somehow relevant to whether NASA's contract decisions were reasonable and lawful, that his projections are not realistically moored to PlanetSpace's own *bona fides* illustrates that his opinions are unreliable.

  B. **Declaration of John Michael Lounge**

Mr. Lounge describes himself as an "expert" who has been retained by PlanetSpace to address "public interest" issues.  Lounge Decl. ¶ 1.  Mr. Lounge played no role in NASA's contracting decisions.  His declaration was not considered by NASA when NASA made its contract awards.  His declaration does not discuss a "public interest," but instead seeks to re-argue the merits of PlanetSpace's bid proposal.

He sums up his "expert opinion" in paragraph 13:

> Based upon the materials I have reviewed and my experience, . . . it is my professional opinion that, of the three competing proposals (PlanetSpace, Space Exploration Technology and Orbital Science Corporation), <u>PlanetSpace's proposal is the only one that will provide a sufficiently robust, responsive, and resilient capability to the International Space Station</u> for resupply of cargo following the retirement of the Space Shuttle.

Lounge Declaration ¶ 13 (emphasis supplied). The remainder of his declaration (1) argues that PlanetSpace's preferred launch vehicle is superior to those of the successful bidders, ¶¶ 14-25; and (2) declares, *ipse dixit*, that "PlanetSpace appears to have ample financial resources and appropriate subcontractor commitments."[3] ¶¶ 26-35. To this end, Mr. Lounge offers unsupported assertions relating to PlanetSpace's funding commitments, ¶ 27, future cash margins, ¶¶ 28-30, and its purported sale of "future launch capacity," backed only by the bald assurance that "PlanetSpace is . . . in discussions with several customers to sell this excess launching capacity." ¶ 30. Plaintiff has failed to establish that any of Mr. Lounge's assertions or projections were before NASA when making its contracting decision, as his declaration makes no reference to the Administrative Record.

### C.   Declaration of Dr. Chirinjeev Kathuria

Dr. Kathuria is the Chairman and co-founder of PlanetSpace. Kathuria Decl. ¶ 1. Dr. Kathuria played no role in NASA's contracting decisions. His declaration was created solely for this litigation, and was not considered by NASA when making its contract awards.

---

[3]   Mr. Lounge offers these opinions without qualification, and without any apparent concern that he possesses no specialized knowledge, training, or experience in finance, accounting, management, or economics, except that he is "familiar with the . . . financial requirements of successful flight plans[.]" Lounge Decl. ¶ 5.

Sections III, IV, and V of Dr. Kathuria's declaration[4] include (1) his opinion that "PlanetSpace's bid proposal was "significantly less expensive" than those offered by the winning bidders, ¶¶ 26-30; (2) his assessment that "NASA has not paid more than 3.18% of the total value of the SpaceX and OSC contracts[,]" notwithstanding that he possesses no "specific information about the actual payments," ¶¶ 31-35; and (3) his musings on the legal functions and role of the Small Business Administration ("SBA"), and the number of Certificates of Competency issued by the SBA in 2008 and the first half of 2009." ¶¶ 36-37.

### D. The Court Should Strike PlanetSpace's Declarations And The Sections Of Its Brief Which Rely Upon Them

The law of this Circuit requires that the Court strike or disregard the declarations of Messrs. Bowker and Lounge, and sections III, IV, and V of Dr. Kathuria's declaration. As did the protestor in Axiom, PlanetSpace improperly seeks to introduce declarations of individuals who played no role, whatsoever, in the contracting agency's decision-making process, under the justification that they are the opinions of "experts." See Lounge Decl. ¶ 1 ("expert testimony"), Bowker Decl. ¶ 12 ( "professional opinion"); cf. Axiom, 564 F.3d at 1382-83 (describing trial court's improper reliance upon two of Axiom's "expert witness declarations").

Like the declarations in Axiom, PlanetSpace's declarations contain the opinions of the protestor's consultants and employees that, at most, amount to a re-argument of the merits of PlanetSpace's proposal, or a disagreement with the analysis of the contracting agency. See, e.g., Kathuria Decl. ¶ 28 (table calculating PlanetSpace pricing); Bowker Decl. ¶ 13 (re-arguing the

---

[4] We do not seek to strike section II of Dr. Kathuria's declaration, as it arguably relates to the "irreparable harm" requisite for injunctive relief. It does not, however, become part of the Administrative Record, and PlanetSpace may not rely upon statements in this section in its argument on the merits of NASA's contracting decisions.

merits of PlanetSpace's mission timelines); Lounge Decl. ¶ 26-30 (re-arguing the merits of PlanetSpace's financing plan). These disagreements are irrelevant to this Court's inquiry, and must be stricken or disregarded. See, e.g., Axiom, 564 F.3d at 1383 ("a decision is not necessarily unreasonable simply because the disappointed bidder is able to find two witnesses who disagree with it."); Communications EOTech, Inc., 2009 U.S. Claims LEXIS 242 at *50.

As in Axiom, PlanetSpace seeks to introduce extra-record opinions and conjecture that were not before the contracting agency when it made its contract awards. E.g., Kathuria Decl. ¶¶ 31-35 (estimating work performed after contract award); Lounge Decl. ¶ 30 (describing PlanetSpace's recent efforts to sell "additional launch capacity"). These opinions could not possibly be relevant to the issue of whether NASA's contracting decisions were reasonably based upon the record before NASA at the time of contract award. See Camp, 411 U.S. at 142.

Finally, as the Federal Circuit explained in Axiom, "[t]he focus of judicial review of agency action remains the administrative record, which should be supplemented only if the existing record is insufficient to permit meaningful review consistent with the APA." 564 F.3d at 1381. The Administrative Record in this case is exhaustive: it currently includes more than 30,000 pages of facts, analysis, and justification. PlanetSpace's efforts to introduce extraneous data to this proceeding, without a demonstration first that the existing record somehow does not permit "meaningful review," is contrary to law.

## **CONCLUSION**

For the reasons stated above, we respectfully request that the Court strike the declarations of Messrs. Bowker and Lounge, and sections III, IV, and IV of the declaration of Dr. Kathuria, as well as those portions of PlanetSpace's brief that rely upon these declarations.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | TONY WEST<br>Assistant Attorney General |
|  | JEANNE E. DAVIDSON<br>Director |
|  | s/ Alan Lo Re<br>ALAN LO RE<br>Assistant Director |
| OF COUNSEL: |  |
| STACEY K. GRIGSBY<br>Trial Attorney | s/ William G. Kanellis<br>WILLIAM G. KANELLIS<br>Trial Attorney<br>Commercial Litigation Branch<br>Civil Division<br>Department of Justice<br>Attn:  Classification Unit,<br>         8th Floor<br>1100 L Street, N.W.<br>Washington, D.C. 20530<br>Tel:  (202) 353-0526<br>Fax: (202) 514-8640 |
| Dated: September 8, 2009 | Attorneys for Defendant |

CERTIFICATE OF FILING

I hereby certify that on September 8, 2009, a copy of "DEFENDANT'S MOTION TO STRIKE" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

 s/William G. Kanellis