**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
*Bid Protest*

| | |
|---|---|
| PlanetSpace Inc., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 09-476C |
| ) | Judge Block |
| v. ) | |
| ) | |
| United States of America, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| Space Exploration Technologies ) | |
| Corporation and Orbital Sciences ) | |
| Corporation, ) | |
| ) | |
| Defendant-Intervenors ) | |
| ) | |

**PLAINTIFF PLANETSPACE INC.'S OPPOSITION TO THE GOVERNMENT'S MOTION TO STRIKE**

The Government's motion to strike two of the declarations submitted in support of PlanetSpace's Motion for Judgment on the Administrative Record and for Permanent Injunctive Relief, and three Sections of the third declaration, is without merit and should be denied.[1]  Indeed, notwithstanding the Government's contention that PlanetSpace was not entitled to submit these declarations in support of its motion for judgment, the Government itself has submitted two declarations in support of its cross-motion.[2]

---

[1]   The Government seeks to strike Sections III, IV and V of the Kathuria declaration, and the entirety of the Bowker and Lounge declarations, *see* Gov. Mot. 1.

[2]   *See* Declarations of William H. Gerstenmaier and Michael T. Suffredini, submitted in support of Defendant's Response to Plaintiff's Motion for Judgment Upon the Administrative Record, and Cross-Motion for Judgment Upon the Administrative Record (Sept. 18, 2009).

A party such as PlanetSpace, seeking injunctive relief in a bid protest case, must establish three separate elements: (1) the merits of its bid challenge, *i.e*., that the bid award was arbitrary, capricious or in violation of law or regulation; (2) that the party suffered resulting prejudice; and (3) that the requirements for injunctive relief are satisfied. *Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005). The Federal Circuit in *Axiom Resource Management, Inc. v. United States*, 564 F.3d 1374 (Fed. Cir. 2009), and this Court in numerous post-*Axiom* decisions, have made clear that the general prohibition against the submission of materials outside the administrative record applies *only* to the first element: the merits of the protestor's challenge to the bid award (and even that is subject to important exceptions).

By contrast, on the issues of prejudice, and of entitlement to injunctive relief, the moving party is not merely *allowed* to submit additional materials including declarations, but *expected* to do so. This is precisely what PlanetSpace has done here.

**I.     Governing Legal Standard.**

The Federal Circuit in *Axiom* admonished that "[t]he task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based *on the record the agency presents to the reviewing court*." 564 F.3d at 1379 (internal quotations omitted)(emphasis in original). As *Axiom* explains, "[t]he purpose of limiting review to the record actually before the agency is to guard against courts using new evidence to convert the 'arbitrary and capricious' standard into effectively de novo review." *Id.* at 1380 (internal quotations omitted).

As the foregoing quotations makes clear, *Axiom* explicitly linked the limitations on the utilization of materials outside the administrative record to a court's inquiry into the merits of the plaintiff's claim, *i.e.,* whether the plaintiff had succeeded in showing that the challenged decision was arbitrary, capricious or violative of law or regulation, the test

established by 5 U.S.C. § 706 and incorporated into 28 U.S.C. § 1491(b)(4) (the legal standard for bid protests). *Axiom* never hints, much less holds, that these restrictions apply to the two other salient inquiries: whether the bid protestor has suffered prejudice, and has satisfied the prerequisites to injunctive relief.

Numerous post-*Axiom* CFC decisions left entirely unmentioned in the Government's motion plainly hold that the limitations on extra-record materials have no application to the Court's consideration of the issues of prejudice and remedy:

> Evidence directed at prejudice and remedy necessarily would not be before an agency decisionmaker effecting a procurement decision such as a source selection award. Rather, evidence of the prejudicial effect vel non of a procurement decision or the ramifications of injunctive relief would necessarily post date and flow from such agency decision. Nonetheless, such evidence is crucial to assess whether relief is warranted.

*AshBritt, Inc. v. United States,* 87 Fed. Cl. 344, 367 (2009). Thus, the *AshBritt* court received the bid protestor's declarations "addressing prejudice and injunctive relief evidence." *Id.*

Likewise, in *Holloway & Co. v. United States*, 87 Fed. Cl. 381, 391 n.12 (2009), the Court observed that "[i]n a protest before the court, factual matters respecting relief rest on a separate and distinct footing [than factual matters going to the merits]." As the *Holloway* court explained, "'[i]t is the responsibility of this [c]ourt, not the administrative agency [conducting the procurement], to provide for factual proceedings directed toward, and to find facts relevant to, irreparability of harms or prejudice to any party or to the public interest through grant or denial of injunctive [or declaratory] relief." *Id.* (bracketed material in original), quoting *PGBA, LLC v. United States,* 60 Fed.Cl. 567, 568 n.1 (2004), *aff'd,* 389 F.3d 1219 (Fed. Cir. 2004).

The Government motion addresses neither the foregoing decisions nor the other post-*Axiom* CFC decisions reaching precisely the same conclusion. *See, e.g.*, *Totolo/King v. United States,* 87 Fed. Cl. 680, 693 (2009) ("a court [cannot] evaluate the parties' factual

showings regarding the three equitable findings for injunctive relief without accepting post-final-agency-action evidentiary submissions.  This court therefore does not interpret the new guidelines in *Axiom* to change the trial court's practice, other than to emphasize restraint and adherence to precedent."); *Akal Security, Inc. v. United States*, 87 Fed. Cl. 311, 320 n.8 (2009) ("The court's findings concerning the balance of harms are based on information concerning events and developments occurring after award and therefore could not be expected to be based on evidence within the AR…. [T]he 'balance of harms' prong of the test for preliminary injunctive relief looks to matters outside the record..."); *NEQ, LLC v. United States,* 88 Fed. Cl. 38, 47 n.6 (2009) ("*Axiom* undoubtedly permits limited supplementation of the record with evidence that does not involve the agency's procurement decision (*e.g*., evidence as to whether plaintiff would experience irreparable harm)").

**II.     PlanetSpace's Merits Arguments Conform to the Foregoing Legal Principles.**

PlanetSpace's merits arguments are set forth in Section IV of the memorandum in support of its motion for judgment and injunctive relief.  PlanetSpace faithful adhered in that section to the strictures regarding the reliance upon materials outside the record.

1)     Count I of PlanetSpace's complaint challenges the bid award on the ground that the Source Selection Authority's decision constituted an unlawful finding of non-responsibility, *i.e.*, that PlanetSpace lacked the financial, technical, and managerial ability to perform the contract.  *See* PlanetSpace Mem. 12-18.  Given that PlanetSpace is a small business, NASA lacked the legal authority to make such a finding, but was required by law and regulation to refer the question of PlanetSpace's responsibility to the Small Business Administration ("SBA"), whose decision on that question is binding on all federal agencies.  *Id.*

PlanetSpace did not rely upon any declarations in support of Count I.

2)      Count II challenges the Source Selection Authority's decision to award a contract to Orbital, because he did not engage in the legally required trade-off analysis between Mission Suitability versus Price.  *See* PlanetSpace Mem. 19-22.  This error was critical, given that Orbital's proposal was a whopping $613 million more expensive than PlanetSpace's.  Thus, NASA's failure to conduct the required trade-off analysis represented an abdication of its legal duty to "dig deep[] and determine whether the relative strengths and weaknesses of the competing proposals are such that it is worth paying a higher price."  *Serco, Inc. v. United States*, 81 Fed. Cl. 463, 497 (2008); *see also id.* ("as th[e] magnitude [of the price differential] increases, the relative benefits yielded by the higher-priced offer must also increase").

Because NASA never performed the legally required trade off analysis, the $613 million difference between the Orbital and PlanetSpace bids does not appear as such in the Source Selection Authority's decision or the administrative record.  The $613 million figure can be derived from the portions of the administrative record containing the pages of the Orbital and PlanetSpace proposals that set forth their proposed pricing, *see* AR 6171-78, 6349, 10,966-71, and PlanetSpace cited those pages in its merits argument at p. 19.  However, deriving this $613 million figure from those pages is a technical matter, and PlanetSpace therefore provided in its memorandum a single citation to a short explanation by PlanetSpace Chairman Kathuria as to the calculation of the $613 million figure.  *See* PlanetSpace Mem. 19, *citing* Kathuria Decl. ¶¶ 26-30.[3]

That explanation is intended as an aid to the Court, and as noted, was made necessary by the very legal violation giving rise to Count II -- NASA's failure to have

---

[3]     Dr. Kathuria's calculations comprise Section III of his declaration, one of the sections of that declaration that the Government seeks to strike, *see* Gov. Mot. 1.

determined the price difference between the two proposals and directly assess that difference against the proposals' relative mission suitability.  PlanetSpace's submittal of Dr. Kathuria's short explanation is entirely permissible given the rule allowing a declaration "useful in explaining the filed administrative record" (*Career Training Concepts, Inc. v. United State*s, 83 Fed. Cl. 215, 225 (2008)), especially when "necessary to explain technical terms or complex subject matter."  *City of Las Vegas v. FAA*, 570 F.3d 1109, 1116 (9th Cir. 2009); *accord Franklin Savings Ass'n v. Office of Thrift Supervision*, 934 F.2d 1127, 1137-38 (10th Cir. 1991).

Notably, the Government in its own cross-motion for judgment cites, without disputing the accuracy of, Dr. Kathuria's calculated $613 million difference between the Orbital and PlanetSpace bids, *see* Gov. Mem. 25.

3)   Count III establishes that the Source Selection Authority unlawfully based his decision on criteria not specified in the Request For Proposal, when he decided that the PlanetSpace proposal (but neither of the other proposals) should have included a subcontractor back-up plan.  *See* PlanetSpace Mem. 22-23.  PlanetSpace did not rely upon any declarations in connection with Count III.

4)   Count IV establishes that the Source Selection Authority's consideration of past performance in reviewing the PlanetSpace proposal was unreasonable and contrary to the stated evaluation requirements.  *See* PlanetSpace Mem. 23-27.  PlanetSpace did not rely upon any declarations in connection with Count IV.

5)   Count V establishes that NASA's award to Orbital violated the U.S. Space Transportation Policy, which requires that "United States Government payloads shall be launched on space launch vehicles manufactured in the United States, unless exempted by the Director of the Office of Science and Technology Policy, in consultation with the Assistant to the

President for National Security Affairs." *See* PlanetSpace Mem. 27-31.  The award to Orbital was unlawful because (a) the Orbital space launch vehicle is not manufactured in the United States, and (b) a valid exemption from the Space Transportation Policy was not obtained.  *Id.*

In support of Count V, PlanetSpace has relied in part on the declaration of Michael Bowker, for the proposition that the first stage of Orbital's Taurus II rocket will include Russian-made engines, and that Orbital has acknowledged that the first stage of the rocket will be manufactured in the Ukraine.  Citation to a declaration for these propositions is entirely appropriate, given that Count V is based on the very failure of the agency properly to consider highly relevant (indeed, disqualifying) facts regarding the composition of the Orbital launch vehicle.

A court may -- indeed, often it must -- go outside the administrative record when a bid protest is based in part on the assertion that the agency "failed to consider factors which are relevant to its final [bid award] decision."  *Totolo*, 87 Fed. Cl. at 692 (identifying this as one of the "exceptions [that] are still viable" post-*Axiom*)*; accord Red River Holdings, LLC v. United States,* 87 Fed. Cl. 768, 788 n. 28 (2009), *citing RhinoCorps Ltd. v. United States*, 87 Fed. Cl. 261, 272-73 (2009) (both post-*Axiom* decisions).

As one court succinctly summarized, "when the plaintiff alleges that the agency failed to take into consideration all relevant factors, the court may need to look outside the record to determine what matters the agency should have considered but did not."  *Morongo Band of Mission Indians v. FAA*, 161 F.3d 569, 573 (9th Cir. 1998) (internal quotations omitted); *accord Lion Raisins, Inc. v. United States*, 51 Fed. Cl. 238, 244 (2001) ("[a] party may supplement the administrative record when necessary to prove that evidence not in the administrative record…should have been considered [and] is evidence without which the court cannot fully

understand the issues"); *Global Computer Enterprises, Inc. v. United States*, 88 Fed. Cl. 52, 61-62 (2009) (endorsing this rule post-*Axiom*).

Given that Count V arises out of the very absence in the administrative record of the required analysis of the foreign origin of the Orbital launch vehicle, the court must of necessity "look outside the record to determine what matters the agency should have considered but did not," *Morongo*, 161 F. 3d at 573 (internal quotations omitted).  PlanetSpace therefore appropriately submitted declaration evidence addressing the nature of the Orbital launch vehicle.

6) Count VI establishes that the Source Selection Authority's decision was irrational in his analysis of PlanetSpace's financing and its method for paying its subcontractors.  *See* PlanetSpace Mem. 31-34.  PlanetSpace did not rely upon any declarations in connection with Count VI.

In sum, PlanetSpace made only two, quite limited references to declarations in the section of its memorandum challenging the merits of NASA's award decision: one reference that served to clarify a technical matter (how to calculate the cost difference between the Orbital and PlanetSpace proposals), and the other to cite evidence that should have been included in the administrative record but was not (the foreign nature of the Orbital launch vehicle).  Both references are entirely appropriate under *Axiom* and its progeny.

### III. PlanetSpace Appropriately Relied Upon Declarations to Support Its Proof of Prejudice.

Prejudice requires a showing of "a 'substantial chance' [PlanetSpace] would have received [a] contract award but for [NASA]'s errors in the bid process."  *Bannum,* 404 F.3d at 1358 (citations omitted).  The "test is more lenient than showing actual causation, that is, showing that but for the errors [the plaintiff] would have won the contract."  *Id.* (citations omitted).

The Court may well conclude that the existence of prejudice here is self-evident: (a) NASA had decided to award contracts to at least two of the three bidders, (b) the Source Evaluation Board had ranked PlanetSpace's Mission Suitability Factor materially higher than Orbital, and (c) PlanetSpace's bid was indisputably hundreds of million of dollars less than Orbital's. Thus, if the Court agrees with PlanetSpace that *any* of its substantive claims regarding errors in the Source Selection Authority's evaluation of PlanetSpace's Mission Suitability was more than *de minimis*, it necessarily follows that there was a "substantial chance" that PlanetSpace would have been awarded a contract. *See* PlanetSpace Mem. 34-35.

Nonetheless, to dispel any possible doubt on the question, PlanetSpace through Section V of the Kathuria declaration submitted information going to the prejudice caused by one of NASA's substantive violations, its failure to refer to the Small Business Administration for its *binding* determination whether Planet Space is responsible, *i.e.*, whether it had the ability and capacity to perform the contract, *see* PlanetSpace Mem. 12-18 and p. 4 *supra*. That information relates to the fact that the SBA routinely disagrees with adverse agency responsibility determinations, *see* Planet Space Mem. 35, *citing* Kathuria Decl. ¶ 36-37, clearly establishing the prejudicial effect of NASA's failure here to refer the issue of responsibility to the SBA for its resolution.

This Court post-*Axiom* has repeatedly endorsed the submittal of materials outside the administrative record in order to demonstrate prejudice, *see AshBritt, Holloway,* p. 3 *supra*. PlanetSpace's reliance upon evidence regarding the SBA's actual practices with respect to responsibility determinations, in order to show prejudice, was entirely proper.

### IV.   PlanetSpace Appropriately Relied Upon Declarations to Support Its Proof of Irreparable Harm.

The irreparable harm that PlanetSpace will suffer absent injunctive relief is largely self-evident, given that the salient inquiry is whether the bid protester has an adequate remedy at law in the absence of an injunction, but the CFC is precluded as a matter of law from awarding a bid protestor the profits it would have earned had it received the award.  *See* PlanetSpace Mem. 36, *citing ViroMed Labs., Inc., v. United States*, 87 Fed. Cl. 493, 503 (2009).

In addition to making the foregoing legal observations, PlanetSpace cited the declaration of its chairman Dr. Kathuria, detailing the specific irreparable injuries PlanetSpace will suffer absent injunctive relief, including the loss of key personnel; the endangerment of its relationship with Lockheed, ATK and Boeing; and the imperilment of the Company's long term viability.  PlanetSpace Mem. 36, *citing* Kathuria Decl. ¶¶ 15-25.  PlanetSpace was clearly entitled to submit such declaration evidence, *see NEQ*, 88 Fed. Cl. at 47 n.6  ("*Axiom* undoubtedly permits limited supplementation of the record with…evidence as to whether a plaintiff would experience irreparable harm"); *Holloway*, 87 Fed. Cl. at 392 n.12 ("[i]t is the responsibility of this [c]ourt, not the administrative agency [conducting the procurement], to provide for factual proceedings directed toward, and to find facts relevant to, irreparability of harms…") (internal quotations omitted); *Totolo,* 87 Fed. Cl. at 693 ("a court [cannot] evaluate the parties' factual showings regarding the three equitable findings for injunctive relief without accepting post-final-agency-action evidentiary submissions.").

Indeed, the Government acknowledges the appropriateness of PlanetSpace's reliance upon declarations to support its claim of irreparable injury.  The Government does not move to strike the section of the Kathuria declaration (Section II) addressing irreparable injury, *see* Gov. Mot. 1, and the Government elsewhere explicitly acknowledges that his declaration was

appropriately submitted on that issue, *see* Gov. Mot. 9 n.4. This Government admission logically implies the propriety of PlanetSpace's submittal of declaration materials not only with respect to irreparable injury but the other two prongs of the test for injunctive relief, *see, e.g.*, *Totolo*, 87 Fed. Cl. at 693 ("a court [cannot] evaluate the parties' factual showings *regarding the three equitable findings for injunctive relief* without accepting post-final-agency-action evidentiary submissions") (emphasis added).

## V. PlanetSpace Appropriately Relied Upon Declarations to Support Its Proof Regarding the Balance of Hardships.

It is questionable whether the Government seriously disputes PlanetSpace's entitlement to submit declaration evidence regarding the balance of hardships, particularly as they relate to post-award events. After all, the Government itself routinely submits declarations in this precise context. *See, e.g., Akal,* 87 Fed. Cl. at 320 (submitting declaration regarding Government's ramp-up costs and related issues).

In any event, as the *Akal* court explicitly held: "[T]he 'balance of harms' prong of the test for preliminary injunctive relief looks to matters outside the record...." *Id.* at 320 n.8; accord *Totolo,* 87 Fed. Cl. at 693 ("a court [cannot] evaluate the parties' factual showings regarding the three equitable findings for injunctive relief without accepting post-final-agency-action evidentiary submissions."). PlanetSpace has therefore appropriately relied upon declaration evidence to address balance of hardships issues.

For example, consistent with the issue raised by the Government in *Akal* regarding ramp-up costs and related issues, PlanetSpace submitted via declaration evidence demonstrating that NASA has to date paid out less than 3.18% of the total Space-X and Orbital contract prices, an amount (approximately $70 million per contract) far less than the savings the Government will garner by selecting the $613 million cheaper PlanetSpace proposal, *see*

PlanetSpace Mem. 38, citing Kathuria Decl. ¶ 35.  PlanetSpace's reliance upon such declaration evidence with respect to the balance of hardships is consistent with both case law and the Government's own practice.

## VI.      PlanetSpace Appropriately Relied Upon Declarations to Support Its Proof Regarding the Public Interest.

The Court may well find it unnecessary to dwell extensively on the public interest issue.  First, PlanetSpace has established that the International Space Station Resupply procurement violated legal requirements, and "[i]t has long been recognized that the public interest is served by an injunction that is designed to ensure that the procurement process is conducted pursuant to law."  *Wackenhut Servs., Inc. v. United States*, 85 Fed. Cl. 273, 312 (2008); *see* PlanetSpace Mem. 38.  Second, any purported negative public interest impacts must be shown to be causally linked to the *specific* injunctive relief PlanetSpace seeks, *see id*., and PlanetSpace's requested relief simply requires NASA to conduct a re-procurement in conformity with applicable law and regulation.  The existing contracts can continue in the interim; and one possible result will be the award of a third contract, to PlanetSpace.  *See* PlanetSpace Mem. 38-39.

Given the limited relief PlanetSpace seeks, the Court need not delve deeply into the implications of a NASA decision, upon re-evaluation, to award a contract to PlanetSpace that displaces either Orbital or Space-X.  However, in an abundance of caution, PlanetSpace submitted declarations addressing the public interest, which show that, *based on the performance of Orbital and Space-X to date*, PlanetSpace would almost surely be able to provide the necessary resupply services to the Space Station sooner than those companies.  *See* PlanetSpace Mem. 39-40, citing the Bowker and Lounge declarations.

The Government's suggestion that PlanetSpace cannot submit declarations thus addressing the public interest factor flies in the face of clear contrary holdings by this Court, *e.g., Holloway,* 87 Fed. Cl. at 392 n.12 ("[i]t is the responsibility of this [c]ourt, not the administrative agency [conducting the procurement], to provide for factual proceedings directed toward, and to find facts relevant to…the public interest through grant or denial of injunctive [or declaratory] relief." (internal quotations omitted)); *Totolo*, 87 Fed. Cl. at 693 ("a court [cannot] evaluate the parties' factual showings regarding the three equitable findings for injunctive relief without accepting post-final-agency-action evidentiary submissions.")  Indeed, the Government's position cannot be reconciled with its own submittal of two declarations in support of its cross-motion for judgment, *see* p. 1 & n.2 *supra*.

The Government's contention that this public interest inquiry would impinge upon the bid award itself is misplaced.  Whether the bid award was lawful is an entirely different inquiry, which is entirely based (with two limited, appropriates exceptions) upon the administrative record relating to the award decision, *see* Section II *supra*.  The public interest inquiry is separate, and importantly, the Court must assess the public interest based upon facts as they exist at the time the Court resolves whether to grant injunctive relief, not as they may have existed at the time the award was made.

"Equity acts in the present tense, and molds its decree to actualities not history." *Ohio-Sealy Mattress Mfg. Co. v. Kaplan*, 745 F.2d 441, 451 (7th Cir. 1984) (internal quotations omitted).  Accordingly, "it goes without saying that, in determining whether the requirements for an injunction have been met, this Court must look to the facts in existence at the time that the injunction issues…" *City of College Station v. City of Bryant*, 932 F. Supp. 877, 885 (S. D. Tex. 1996).  Therefore, a court "will give relief appropriate to events occurring pending the suit."

*Champion Spark Plug Co. v. Reich*, 121 F.2d 769, 772 (8th Cir. 1941); *see also* 43A C.J.S. Injunctions § 91 (2009) ("Since equity acts in the present tense, relief is dependent on present and future conditions…."); 42 Am. Jur. 2d Injunctions § 3 (2009) ("Generally, the conditions at the time of the hearing of the suit, rather than as they existed at the suit's commencement, will be the basis for any injunctive relief.")

Thus, to the extent the "public interest" may be implicated by the timing by which PlanetSpace could provide resupply services as compared to Space-X or Orbital, the salient inquiry addresses that question based upon facts as they now exist.[4] And, in that context, the Bowker and Lounge declarations provide highly relevant information. As those declarations establish, Space-X and Orbital are both relying upon launch vehicles and orbital transfer vehicles that are unproven; are far behind schedule for their development; and have suffered grievous failures in attempting to launch and make orbital deliveries using far simpler launch systems. Bowker Decl. ¶¶ 53-79.

By contrast, PlanetSpace proposes to rely on the *existing,* Atlas V launch vehicle, which has flown successfully 85 times, for its first flight, and to rely on Lockheed-Martin to develop the orbital transfer vehicle, something it has done many times before, and which is in this case based on a design Lockheed Martin developed pursuant to a prior NASA contract. Bowker Decl. ¶¶ 15-27; Lounge Decl. ¶¶ 11-35.

In short, the Bowker and Lounge declarations are relevant to the public interest inquiry and were appropriately submitted by PlanetSpace.

---

[4] The submittal of declaration materials is particularly warranted given that in connection with its source selection decision, NASA used a May 28, 2008 cut off date for the bidders' submission of information regarding past performance (the due date of the Past Performance Volume). Bowker Decl. ¶ 11.

## CONCLUSION

The Government's motion to strike should be denied.

>Respectfully submitted,
>
>s/ Steven J. Rosenbaum
>Steven J. Rosenbaum
>*Counsel of Record*
>Derron J. Blakely
>Covington & Burling LLP
>1201 Pennsylvania Avenue, N.W.
>Washington, D.C.  20044
>(202) 662-5568
>(202) 778-5568 fax
>srosenbaum@cov.com

September 22, 2009                              *Counsel for Plaintiff PlanetSpace Inc.*