## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| PLANETSPACE, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 09-476 C |
| ) | (Judge Lawrence J. Block) |
| THE UNITED STATES OF AMERICA, ) | |
| ) | BID PROTEST |
| Defendant, ) | |
| ) | |
| SPACE EXPLORATION ) | |
| TECHNOLOGIES CORPORATION, ) | |
| ) | |
| Intervenor, and ) | |
| ) | |
| ORBITAL SCIENCE CORPORATION, ) | |
| ) | |
| Intervenor. ) | |

### DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE

Pursuant to Rules 7 and 52.1 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully submits this reply in support of its motion to strike the declarations of Michael Bowker and John Michael Lounge, and sections III, IV, and V of the declaration of Dr. Chirinjeev Kathuria, in the above-captioned matter.

In our initial motion, we established that these declarations should be stricken because they (1) were not before NASA at the time of award of the contracts at issue, (2) describe events after contract award, and (3) include the opinions and conjecture of PlanetSpace employees and consultants that do little more than express personal disagreement with NASA's contracting judgments. We explained that PlanetSpace's reliance upon these declarations is at odds with the law of this Circuit – in particular, Axiom Resource Management, Inc. v. United States, 564 F.3d 1374 (2009) ("Axiom"). See Defendant's Motion to Strike ("Def.Mot.") at 5-10.

Plaintiff does not materially dispute our explanation, but instead seeks to downplay the significance of Axiom. Notwithstanding that Axiom is a published opinion without competing authority, plaintiff blithely announces that the Federal Circuit's holding in Axiom is "subject to important exceptions." Pl.Resp.2. Plaintiff then carves out for itself certain exceptions to the rule against extra-record evidence, based upon the same reasoning employed by the trial court in Axiom. As discussed below, plaintiff's herald of exceptions to Axiom is without merit, and misarticulates the scope of record review under 5 U.S.C. § 706.

Next, notwithstanding that plaintiff cited to these declarations no fewer than 21 times in its arguments on the merits, plaintiff insists that its reliance upon them should be allowed because (1) they do not address the merits of plaintiff's protest, and (2) even if they did address the merits, they are relatively minor additions to the record. Below, we discuss how plaintiff's efforts to characterize these declarations as benign is undermined by their solitary focus on disputing NASA's contracting assessments.

**I.      Plaintiff's Attempt To Delimit The Federal Circuit's Decision In Axiom, Ignores Its Plain Import, Misunderstands Record Review, And Is Contrary To Law**

In our initial motion, we explained that "[t]he task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court." Florida Power & Light v. Lorion, 470 U.S. 729, 743-44 (1985) ("Florida Power") (citing Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402 (1971)). Accordingly, in a bid protest, judicial review is generally limited to "the administrative record already in existence, not some new record made initially in the reviewing court." Axiom, 564 F.3d at 1379 (quoting Camp v. Pitts, 411 U.S. 138, 142 (1973)).

Plaintiff alludes to recent decisions of this Court and claims that they somehow announce "exceptions" to Axiom, Florida Power, and Camp. Pl.Resp.7-8. Plaintiff goes even further, claiming that the Court must "go outside the administrative record when a bid protest is based in part on the assertion that the agency 'failed to consider factors which are relevant to its final [bid award].'" Pl.Resp.7 (citing Totolo/King v. United States, 87 Fed. Cl. 680 (2009)).

Plaintiff's argument is logically flawed, is contrary to controlling precedent, and misunderstands the Court's role when engaged in Rule 52.1 record review.

First, plaintiff's reasoning is elliptical: Plaintiff contends that (1) the record should be supplemented because NASA failed to consider "factors" relevant to its award decision; (2) these "unconsidered factors" are identified in declarations of "experts" who played no role in the procurement, and (3) *therefore*, the record should be supplemented with these declarations. Pl.Resp.7. In sum, plaintiff argues, *petitio principii*, that declarations are needed because plaintiff's declarants assert they are needed. By this reasoning, record review should be set aside whenever a declarant claims that the contracting agency failed to consider a factor that the declarant believes the agency should have considered. This argument not only assumes its own conclusion, but turns record review on its head. Further, it thwarts the express rule of Camp, Florida Power, and Axiom.

The Court's role in this protest, and in any proceeding governed by section 706 of Title 5, is not to assess, *de novo*, whether the agency "failed to consider" certain factors, or did not give enough weight to certain criteria, or could have reached a more optimal conclusion. See Camp, 411 U.S. at 141-42 (e.g., "[n]or was the reviewing court free to hold a *de novo* hearing under § 706(2)(F) and thereafter determine whether the agency action was 'unwarranted by the

3

facts.'"). Rather, the Court's responsibility is to assess whether "the contracting agency provided a coherent and reasonable explanation of its exercise of discretion[.]" Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332-33 (Fed. Cir. 2001). When the Court "finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations." Honeywell, Inc. v. United States, 870 F.2d 644, 648 (Fed. Cir. 1989) (quoting M. Steinthal & Co. v. Seamans, 455 F.2d 1289, 1301 (D.C. Cir. 1971)).

Accordingly, "[t]he administrative record should not include materials created or obtained subsequent to the time the decision-maker decided to take the challenged agency action or materials adduced through discovery by opponents of the agency's actions in *de novo* proceedings in court." Great Lakes Dredge & Dock Co. v. United States, 60 Fed. Cl. 350, 359 (2004) (citing Florida Power, 470 U.S. at 743). As the court of appeals explained in Axiom, "[t]he purpose of limiting review to the record actually before the agency is to guard against courts using new evidence to "convert the 'arbitrary and capricious' standard into effectively *de novo* review." 564 F.3d at 1380 (citation omitted).

Plaintiff's contention that the narrow scope of record review outlined in Camp, Florida Power, and Axiom, is circumvented by the bare proclamation of an outside "expert" that the agency failed to consider certain factors, is anathema to controlling precedent. Introducing extraneous "factors" not before the agency at the time of contract award would convert this proceeding to the *de-novo* review described in Axiom. Id. Plaintiff's proposed declarations attempt to do just that.

Indeed, plaintiff's reasoning is precisely the tack taken by the trial court in <u>Axiom</u>: the court added to the record declarations of the protestor's hired consultants, who claimed that the contracting agency "fail[ed] to appreciate the difference between 'purchased care' and 'non-purchased care' services." <u>Axiom Resource Management, Inc. v. United States</u>, 78 Fed. Cl. 576, 591 (2007). Like PlanetSpace's consultants, the <u>Axiom</u> consultants offered their personal opinions as to why the contracting agency's failure to consider these factors led to a flawed contracting decision. <u>Id.</u> The Court relied upon these consultants' opinions to conclude that the contract award would give the successful bidder an "unfair competitive advantage in future procurements." <u>Id.</u> at 599. On appeal, the Federal Circuit rejected this reasoning, and held that the trial court erred by supplementing the record. Instead, the court of appeals framed review of the agency's contracting decision in terms of the reasonableness of the record before the agency at the time of contracting. <u>Axiom</u>, 564 F.3d at 1383.

Contrary to plaintiff's suggestion, Pl.Resp.3-4, 7-8, the post-<u>Axiom</u> decisions of this Court can in no way vitiate or diminish <u>Axiom</u>'s plain import. Indeed, just this week, the Federal Circuit affirmed the vitality of <u>Axiom</u>'s central holding: "We recently reaffirmed the principle that parties must make the administrative record before the agency in [<u>Axiom</u>]." <u>Walls v. United States</u>, Fed. Cir. No. 2008-5179 at *16 (Sep. 29, 2009) (attached as Exhibit 1). In <u>Walls</u>, the Federal Circuit confirmed the basic rule that a record review, conducted pursuant to section 706 of Title 5, is not to be expanded <u>even where the record is inadequate</u>:

> the Supreme Court has established that review under the APA is generally limited to the administrative record. In <u>Florida Power & Light Co. v. Lorion</u>, the Supreme Court stated that "[t]he task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record

5

> the agency presents to the reviewing court." 470 U.S. 729, 743–44 (1985).  If the record is inadequate, "[t]he reviewing court is not generally empowered to conduct a de novo inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry," and instead "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Id. at 744.

Id. at *15 (emphasis supplied).  Walls does not announce new law, but merely reaffirms the Court's deferential posture when engaged in record review.  It also extinguishes plaintiff's efforts to fashion exceptions to Axiom.  See Pl.Resp.7-8.  Axiom and Walls are unambiguous, and plaintiff's contention that it may cite to a declaration outside of the record because the existing record is inadequate, Pl.Resp.7, is contrary to controlling precedent.

## II.   Plaintiff's Declarations Do Not Relate To A "Public Interest" Or "Injury," But Are Directed Toward Supporting Plaintiff's Arguments On The Merits Of Its Protest

Plaintiff seeks to downplay the significance of its declarations by casting them as relating only to the "public interest" or "injury" criteria of injunctive relief.  Pl.Resp.2-14.  Plaintiff insists that, "PlanetSpace faithful [sic] adhered . . . to the strictures regarding the reliance upon materials outside the record."  Pl.Resp.4.  Further, plaintiff asserts that it "did not rely upon any declarations" in support of Counts I and VI of its complaint.  Pl.Resp.4, 8.

These statements are misleading.  In Count I, plaintiff alleges that NASA should have referred its assessment of PlanetSpace's management and financing plan to the SBA.  Pl.Br.12-16.  Count VI asserts that NASA's assessment of PlanetSpace's subcontracting structure and finance plan was irrational.  Pl.Br.31-34.  PlanetSpace's declarations address each of these topics in full:  Dr. Kathuria's declaration describes his lay understanding of the functions of the SBA.  Kathuria Decl. ¶ 36-37.  Mr. Lounge's declaration defends and re-argues the merits of

PlanetSpace's "Financing Plan" and "Subcontracting Arrangements." Lounge Decl. ¶¶ 26-35. Mr. Bowker's declaration defends PlanetSpace's "Two Launch Vehicle Plan," Bowker Decl. ¶ 47-52, and plaintiff's statement of facts cites to his declaration 15 times. Pl.Br.6-8. Plaintiff's representations to the Court that these declarations merely go to matters outside the merits, and do not address the subject matter of Counts I and VI, Pl.Resp.4-8, are simply not true.

Indeed, a closer inspection of these declarations reveals that they are directed primarily toward responding to, and contesting, NASA's criticisms of PlanetSpace's bid proposal.

### A.     Mr. Bowker's Declaration Has Nothing To Do With The "Public Interest"

As we explained in our initial motion, Mr. Bowker is a consultant hired by PlanetSpace who offers his estimates of how PlanetSpace would perform in the future if it were awarded a contract. See Def.Mot.6-7. We took issue with the fact that Mr. Bowker's declaration had nothing to do with a "public interest," but was entirely directed at presenting his opinion that "PlanetSpace's first mission is likely to occur before either of the winning bidders' first missions." Bowker Decl. ¶ 12.

Plaintiff claims that we suggest that it "cannot submit declarations . . . addressing the public interest factor," and goes on to cite two opinions which do not support its contention that the "public interest" criterion can be satisfied by a protestor's declaration. Pl.Resp.13, cf. Holloway & Co. v. United States, 87 Fed. Cl. 381, 392 (2009); Totolo/King, 87 Fed. Cl. at 693 (alluding to matters of "national defense" and "national security" from a "responsible official").

This response attacks a phantom argument, and avoids the argument that we did make. Our point was that Mr. Bowker's declaration has nothing to do with a public interest. The "public interest" criterion does not inquire of one company's abilities or perceived advantages.

Rather, it considers "the public consequences [of] employing the extraordinary remedy of injunction." Winter v. Natural Res. Def. Council, Inc., __ U.S. __, 129 S. Ct. 365, 376-77 (Nov. 12, 2008). It views injunctive relief not in terms of its local consequences, but in terms of broader social and political considerations. See, e.g., Am. Civil Liberties Union v. Johnson, 194 F.3d 1149, 1163 (10th Cir. 1999) (public interest in protecting "the free expression of the millions of Internet users both within and outside of the State of New Mexico").

Mr. Bowker's declaration does not discuss "public consequences" of an injunction, but rather, offers hyper-optimistic conjecture that PlanetSpace will be "ready to launch" in a timely manner, and conversely, that SpaceX and Orbital will not.[1] Bowker Decl. ¶¶ 11-12; cf. Storman's Inc. v. Selecky, 571 F.3d 960, 989 (9th Cir. 2009) (courts need not consider public consequences that are 'highly speculative'). However sincere, Mr. Bowker's declaration relates only to his beliefs that PlanetSpace can perform the contract faster than its competitors. As it bears no relation to a public interest, Mr. Bowker's declaration, and the 15 references to it in plaintiff's brief, should be stricken.

### B.  Portions Of Mr. Kathuria's Declaration Are Directly Relied Upon To Support The Merits Of Plaintiff's Protest

In our initial brief, we explained that sections III, IV, and V of Dr. Kathuria's declaration should be stricken because they merely re-argue the merits of its PlanetSpace's proposal, and/or are irrelevant. Dr. Kathuria asserts that PlanetSpace's proposal was "significantly less

---

[1] By contrast, the declarations submitted with our Rule 52.1 brief do not address the perceived benefits of one contractor over another, but NASA's description of the national and international consequences that would attend an interruption of contract performance. See Exhibits A & B of Defendant's Response to Plaintiff's Motion for Judgment upon the Administrative Record, and Cross-motion for Judgment upon the Administrative Record.

expensive" than the winning bidders' proposals, ¶¶ 26-30; offers speculation on the amount NASA has paid SpaceX and Orbital, ¶¶ 31-35; and provides his lay reflections on the functions of the Small Business Administration.  ¶¶ 36-37.  See Def.Mot.8-9.

Plaintiff relies upon Dr. Kathuria's declaration to support its argument on the merits of its protest relating to the perceived price advantage of PlanetSpace's proposal.  Pl.Br.9, 19.  Plaintiff does not dispute this fact, but instead announces that adding Dr. Kathuria's *ex-post* calculations to the record is "entirely permissible" because they "are useful in explaining the filed administrative record."  Pl.Resp.6.  Setting aside that plaintiff cites opinions which pre-date Axiom and Walls, it articulates a standard that is meaningless:  it allows supplementation in all circumstances, as just about any document could be described as "useful" in some respect.  Further, that a protest involves "technical terms" or "complex subject matter" in no way justifies setting aside Congress' intent that a Court confine its review to the record before the contracting agency.  Camp, 411 U.S. at 142.  In fact, virtually all procurements involve technical language of some sort; it is counsel's responsibility to learn this subject matter and convey it to the Court.[2]

Finally, plaintiff claims that the Government "cites, without disputing the accuracy of, Dr. Kathuria's calculated $613 million difference between the Orbital and PlanetSpace bids." Pl.Resp.6. By this statement, plaintiff intimates that our reference to the figure amounts to tacit acceptance of it.  We did nothing of the sort.  Our brief did not condone plaintiff's use of the figure; rather, it explained why plaintiff's use of the figure was irrelevant.

---

[2]   Plaintiff also insists that Dr. Kathuria's calculation of the price differential relates to the "balance of hardships" because of the "savings the Government will garner by selecting the . . . cheaper PlanetSpace proposal." Pl.Resp.11-12. This transparently attempts to re-argue the merits of its case, and misunderstands the considerations in a "best value" procurement.

### C.   Mr. Lounge's Declaration Offers "Expert Testimony" Addressing Two Of NASA's Central Criticisms Of PlanetSpace's Proposal

Mr. Lounge offers "expert testimony" directed at two of NASA's primary reasons for rejecting PlanetSpace's proposal: NASA (1) criticized PlanetSpace's proposed use of two separate rocket vehicles as a "significant weakness," and (2) concluded that its proposal introduced "high financial risk." AR5175, AR5177. In response, Mr. Lounge (1) opines that PlanetSpace's proposed launch vehicles are preferable to those of SpaceX and Orbital, Lounge Decl. ¶¶ 13-25, and (2) re-argues the merits of PlanetSpace's offer and concludes that it "appears to have ample financial resources and appropriate subcontractor commitments." Id. ¶¶ 26-35.

Plaintiff's response does not explain how Mr. Lounge's *ex-post* opinions on its financing and subcontracting plans could be part of the administrative record. Otherwise, plaintiff insists that Mr. Lounge's encomium on the virtues of its launch vehicles is "relevant to the public interest inquiry." Pl.Resp.14. Plaintiff's reasoning amounts to this: (1) Mr. Lounge believes PlanetSpace's competitor's rockets are "unproven;" (2) NASA should not use "unproven" rockets; and, (3) *therefore,* choosing PlanetSpace is in the "public interest." Id.

Mr. Lounge's declaration should be stricken for the same reasons that Mr. Bowker's declaration should be stricken. After-the-fact opinions and conjecture of a self-styled "expert" on the perceived superiority of a bidder's proposal have nothing, whatsoever, to do with a "public interest." Plaintiff may not elude this Circuit's rule against extra-record evidence by re-casting defenses of its bid proposal as "public interest" statements.

### CONCLUSION

For the reasons stated above, we respectfully request that the Court Messrs. Bowker and Lounge, and sections III, IV, and IV of the declaration of Dr. Kathuria.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | TONY WEST<br>Assistant Attorney General |
|  | JEANNE E. DAVIDSON<br>Director |
|  | s/ Alan Lo Re<br>ALAN LO RE<br>Assistant Director |
| OF COUNSEL: |  |
| STACEY K. GRIGSBY<br>Trial Attorney | s/ William G. Kanellis<br>WILLIAM G. KANELLIS<br>Trial Attorney<br>Commercial Litigation Branch<br>Civil Division<br>Department of Justice<br>Attn:  Classification Unit,<br>        8th Floor<br>1100 L Street, N.W.<br>Washington, D.C. 20530<br>Tel:  (202) 353-0526<br>Fax: (202) 514-8640 |
| Dated:  October 1, 2009 | Attorneys for Defendant |

CERTIFICATE OF FILING

I hereby certify that on October 1, 2009, a copy of "DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

   s/William G. Kanellis