# United States Court of Federal Claims

No: 09-476 C
(Filed Under Seal: October 26, 2009)
**(Reissued: November 10, 2009)**[*]

_____

**PlanetSpace Inc.,**

   *Plaintiff,*

**v.**

**United States of America,**

   *Defendant,*

**Space Exploration Technologies Corporation,**

   *Intervenor*, **and**

**Orbital Sciences Corporation,**

   *Intervenor.*

Bid Protest; Supplementing
the Administrative Record;
Extra-Record Evidence;
Judicial Review of Administrative
Decisions

_____

  *Steven J. Rosenbaum*, *Derron J. Blakely*, *Scott A. Freling*, *Greta S. Milligan*, *Abram J. Pafford*, Covington & Burling LLP, Washington, DC, for plaintiff.

  *William G. Kanellis*, *Stacey K. Grigsby*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

  *David A. Churchill*, *Kevin C. Dwyer*, *Daniel E. Chudd*, *Caroline A. Keller*, *Anna M. Baldwin*, Jenner & Block LLP, Washington, DC, for intervenor Orbital Sciences Corporation.

  *Richard J. Vacura*, *Keric B. Chin*, *Marc A. Hearron*, Morrison & Foerster LLP, McLean, VA, for intervenor Space Exploration Technologies Corporation.

_____

[*] This opinion originally was issued under seal on October 26, 2009. The court afforded the parties an opportunity to propose redactions in the opinion prior to its publication, but no such redactions were proposed. Accordingly, the opinion is herein reissued for publication, unsealed.

# OPINION and ORDER

**Block,** *Judge*.

On December 23, 2008, the National Aeronautics and Space Administration ("NASA") issued its final award decision in a negotiated procurement for commercial resupply services to the International Space Station (the "ISS-CRS" procurement). NASA awarded contracts to the two intervenors, Space Exploration Technologies Corporation ("Space-X") and Orbital Sciences Corporation ("Orbital"), but not to plaintiff, PlanetSpace Inc. ("PlanetSpace"). On July 23, 2009, PlanetSpace filed a post-award bid protest in this court, seeking declaratory and injunctive relief. Pending before the court, and the subject of upcoming oral argument, are the parties' cross-motions for judgment on the administrative record. Also pending, however, are three motions concerning the content of the record upon which the court must ultimately base its dispositive ruling.

First, defendant has moved to strike three declarations that were attached to, and extensively cited in, plaintiff's motion for judgment on the administrative record. Second, defendant has moved to correct the administrative record, seeking to add two documents relating to NASA's assessment of the compliance of Orbital's proposal with the United States Space Transportation Policy ("Space Policy"). Third, plaintiff has moved to supplement the administrative record, seeking to add 151 pages of documents that it received in response to a request for documents, submitted to the Office of Science and Technology Policy ("OSTP"), pursuant to the Freedom of Information Act ("FOIA").

For the reasons detailed below, (1) defendant's motion to strike is granted-in-part, and denied-in-part, and (2) defendant's motion to correct the administrative record is granted. Partly because the court finds the parties' arguments on admissibility of the FOIA material to be closely intertwined with the merits of plaintiff's protest, the court withholds its decision on plaintiff's motion to supplement the record.

## I. The Scope of the Evidentiary Record in a Bid Protest

In a bid protest, the court reviews the challenged agency decision to determine if it was "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (cited in 28 U.S.C. § 1491(b)(4)). As a general rule, the "focal point for judicial review [of the challenged agency decision] should be the administrative record already in existence, not some new record made initially with the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). The court's task is "to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court." *Fla. Power & Light v. Lorion*, 470 U.S. 729, 743–44 (1985). The purpose of limiting review to the record actually before the agency is to guard against converting the highly deferential APA review, under the "arbitrary and capricious" standard, into effectively *de novo* review of the merits of the agency's decision. *Axiom Res. Mgmt. v. United States*, 564 F.3d 1374, 1380 (Fed. Cir. 2009) (citing *Murakami v. United States*, 46 Fed. Cl. 731, 735 (2000)). Therefore, supplementation of the administrative record is permissible only where omission of the extra-record evidence would "frustrate effective judicial review." *Id.* at 1381 (quoting *Pitts*, 411 U.S. at 142–43).

The conceptual elegance evinced by these fundamental principles of administrative law, as articulated by the Supreme Court in *Pitts* and *Florida Power & Light*, masks the practical difficulty of identifying where the "administrative record" ends and where "extra-record" evidence begins. As the court previously observed, the "administrative record" is something of a fiction: an agency's decision is never based upon a rigid, formal record that is then certified for court review. *Cubic Applications, Inc. v. United States,* 37 Fed. Cl. 345, 350 (1997). Rather, the agency has to exercise some judgment in furnishing the court with materials that adequately document the facts and reasoning supporting the agency's decision.

Accordingly, if the administrative record is equated with "the record the agency presents to the reviewing court," *Florida Power & Light,* 470 U.S. at 744, then it is merely "a convenient vehicle for bringing the decision of an administrative body before a reviewing agency or a court," *CCL Serv. Corp. v. United States*, 48 Fed. Cl. 113, 118 (2000). On the other hand, the contents of the administrative record cannot be wholly contingent. Certain documents are necessarily part of the administrative record, notwithstanding their omission from an agency's submission. *See, e.g.*, *Kerr Contractors, Inc. v. United States*, No. 09-523 C, 2009 WL 3319981, at *23 (Fed. Cl. Oct. 13, 2009) (holding that a form providing the agency's responses to a bidder's questions about the solicitation "*should* have been included in the administrative record in this case." (emphasis added)). This difficulty in delineating the boundaries of the administrative record counsels in favor of "a flexible approach," in balancing the limited nature of APA review with the potential need to go beyond the four corners of the agency's submission, in order to permit meaningful judicial review. *Cubic*, 37 Fed. Cl. at 350.

The court has often looked to a D.C. Circuit decision, *Esch v. Yeutter*, identifying specific circumstances, or "exceptions," under which supplementation of the administrative record is permissible. 876 F.2d 976, 991 (D.C. Cir. 1989). Unfortunately, some of the *Esch* exceptions "are so broadly worded as to risk being incompatible with the limited nature of arbitrary and capricious review." *Murakami*, 46 Fed. Cl. at 735 n.4. Rather than helping to discipline the court's adoption of *Cubic*'s "flexible approach," 37 Fed. Cl. at 350, *Esch* may have led the court to stray too far from "fundamental principles of administrative law." *See Axiom*, 564 F.3d at 1380–81 (finding "problematic" the trial court's over-reliance on *Esch*, and holding its admission of extra-record evidence to be an abuse of discretion). The *Axiom* panel "recognized that supplementation of the agency record is sometimes warranted in the trial court, even in the bid protest context." *Walls v. United States*, No. 2008-5179, 2009 WL 3082293, at *20 (Fed. Cir. Sep. 29, 2009). Nevertheless, *Axiom* clearly signaled the Federal Circuit's adoption of a "more restrictive" view of the permissible scope for supplementation of the administrative record in a bid protest. 564 F.3d at 1380–81. In light of this, neither indiscriminate admission *nor* indiscriminate denial of all materials proffered by the parties is appropriate in a bid protest.

Standing apart from evidence supplementing the administrative record, however, are evidentiary submissions that go to the prospective relief sought in this court. The latter relate to an issue wholly within the court's purview. *Ala. Aircraft Indus., Inc. v. United States*, 82 Fed. Cl. 757, 764 (2008). Accordingly, "[i]t is the responsibility of this [c]ourt, not the administrative agency, to provide for factual proceedings directed toward, and to find facts relevant to, irreparability of harms or prejudice to any party or to the public interest through grant or denial of injunctive relief." *PGBA, LLC v. United States*, 60 Fed. Cl. 567, 568 n.1 (2004). The limited scope of the court's APA review

and the cautionary note of *Axiom* address this court's examination of the reasonableness of the challenged agency action. Evidence respecting relief, however, rests on a separate and distinct footing. *Id.* Such evidence "necessarily would not be before an agency decision-maker effecting a procurement decision such as a source selection award, . . . but would necessarily post date and flow from such agency decision." *AshBritt, Inc. v. United States*, 87 Fed. Cl. 344, 367 (2009). Accordingly, such evidence is admitted, not as a supplement to the administrative record, but as part of this court's record. *Id.*

Heeding both the cautionary note of *Axiom*, as well as the longstanding distinction between evidence respecting relief and evidence offered to supplement the administrative record, the court carefully scrutinizes the materials that defendant has sought to include in, or to strike from, the record in the instant protest.

## II. Defendant's Motion to Strike

To its motion for judgment on the administrative record, plaintiff attached three declarations by (1) Michael Bowker, plaintiff's prospective Chief Operating Officer, Bowker Decl. ¶ 4, (2) plaintiff's Chairman and co-founder Chirinjeev Kathuria, Kathuria Decl. ¶ 1, and (3) John Michael Lounge, a business development consultant retained by plaintiff to provide expert testimony for this bid protest, Lounge Decl. ¶¶ 1, 4. Plaintiff cites to these declarations extensively in its motion for judgment. *See* Pl.'s Mot. for J. at 2, 6–9, 19, 27–29, 35, 36, 38–40.

Defendant has moved to strike the Bowker and Lounge declarations in their entirety, along with sections III–V of the Kathuria Declaration, arguing that these declarations are "largely dedicated to introducing facts outside the record, and re-arguing the merits of NASA's contracting decisions." Def.'s Mot. to Strike at 1. Plaintiff, however, purports to introduce these declarations largely, though not entirely, as evidence relevant to the court's balancing inquiry requisite to the grant of injunctive relief. *See, e.g.*, Pl.'s Mot. for J. at 38–40; Pl.'s Opp'n to Def.'s Mot. to Strike at 2. Given the length of the declarations at issue, and the stark divergence in plaintiff's and defendant's characterization of their probative value, the court scrutinizes each, *seriatim*.

### A. Lounge Declaration

Plaintiff cites the Lounge declaration once in its motion for judgment on the administrative record, as one of the declarations "addressing the public interest" in granting injunctive relief. Pl.'s Mot. for J. at 39. Plaintiff summarizes the Lounge declaration as demonstrating (1) that "PlanetSpace's bid proposal provides NASA with the only launch vehicle . . . that has been flight proven . . . [and] is the only bid that provided NASA with 'assured access'" to the International Space Station (the "ISS"), and (2) that "awarding a contract to PlanetSpace would ensure that ISS operations could be maintained . . . even if Orbital or Space-X are unable to meet their mission schedules." *Id.* As an initial matter, this very summary belies the Lounge declaration's relevance to the court's public interest inquiry. A careful reading of the declaration settles the matter.

The first ten paragraphs of the declaration detail Lounge's background and experience. Lounge Decl. ¶¶ 1–10. Paragraphs 11–12 proffer the basis for Lounge's opinions, namely, the Space Policy, the ISS-CRS solicitation, and the three proposals submitted by plaintiff and both intervenors.

The next eight paragraphs describe background information, either publicly available, or otherwise found in the existing administrative record. *Id.* ¶¶ 12–20.

The remaining fifteen paragraphs are clearly devoted to attacking the merits of NASA's award decision. Paragraphs 22–25 appear to be addressed more to NASA's Source Selection Authority (the "SSA") than to the court, pointing to the critical nature of the ISS-CRS procurement, *id.* ¶ 22, reminding the reader of "NASA's confidence in the reliability" of plaintiff's "proven" launch system, *id.* ¶ 23, and declaring that, of the three participants in the ISS-CRS procurement, plaintiff's launch vehicle is the only one offering assured access to the ISS, *id.* ¶ 25. The next five paragraphs, *id.* ¶¶ 26–30, argue the merits of plaintiff's financing plan, concluding that "PlanetSpace appears to have ample financial resources," *id.* ¶ 26. Finally, Lounge defends the strength of plaintiff's subcontracting arrangement, *id.* ¶¶ 31–34, concluding that "there are no appreciable cost-based performance risks involved in this arrangement," *id.* ¶ 34. This last section is clearly offered as counter-argument to the SSA's determination that plaintiff's contracting arrangement represented a "significant risk" and was a "weakness" in plaintiff's proposal. *See* AR 5176.

In short, the Lounge declaration is devoted entirely to re-arguing the merits of NASA's award decision. The declaration is thus prototypical of the kind of extra-record evidence against which the court must guard, lest it "convert the 'arbitrary and capricious' standard into effectively *de novo* review." *Axiom*, 564 F.3d at 1380 (quoting *Murakami*, 46 Fed. Cl. at 735). Accordingly, the Lounge declaration is stricken in its entirety.

## B. Bowker Declaration

Plaintiff cites the Bowker declaration extensively in its motion for judgment on the administrative record, including, curiously, sixteen citations in its statement of facts. *See* Pl.'s Mot. for J. at 6–8. At the conclusion of that motion, plaintiff proffers the *entire* Bowker declaration as evidence bearing upon the public interest in the grant or denial of injunctive relief. *Id.* at 40. In its motion to strike, defendant argues that, like the Lounge declaration, the Bowker declaration is "devoted wholly to offering personal opinions and arguments relating to the merits of PlanetSpace's bid proposal." Def.'s Mot. to Strike at 6. For the most part, the court agrees with defendant.

The thrust of the Bowker declaration—based variably on fact, opinion, and conjecture—is that, even with a belated contract award, plaintiff could begin performance before either of the two intervenors. Bowker Decl. ¶ 12. The remainder of the declaration attempts to support this contention. In doing so, some portions of the declaration provide information and explanation that are relevant to the court's public interest inquiry. Most of the declaration, however, is either irrelevant or amounts to re-argument of the merits of NASA's award decision.

### 1. Sections Relevant to the Public Interest Inquiry

Paragraphs 13–14 provide plaintiff's original schedule for resupply missions to the ISS (as submitted in plaintiff's bid proposal), along with a revised schedule that Bowker declares plaintiff could meet in the event of a belated contract-award (should the court grant the injunctive relief sought). *Id.* ¶¶ 13–14. Paragraphs 20–21 of the declaration identify the "schedule drivers," i.e., "the steps most relevant to determining when [a] resupply mission to the ISS can take place," for the first,

*id.* ¶ 20, and all subsequent, *id.* ¶ 21, missions. The next section of the declaration, under the heading "First Launch Schedule Drivers," offers Bowker's explanation for why, given the nature of the various launch and cargo transfer vehicles to be used, plaintiff's first mission could launch according to the revised schedule. *Id.* ¶¶ 22–27.

Even if the court were to sustain plaintiff's protest, the court may decide that the public interest in timely performance on these critical contracts weighs against the grant of injunctive relief. Indeed, defendant and intervenors make precisely this argument in various briefs in support of their cross-motions for judgment on the administrative record. *E.g.*, Def.'s Reply in Supp. of Def.'s Mot. for J. at 17; Orbital's Reply in Supp. of Orbital's Mot. for J. 19–20; Space-X's Mot. for J. at 38. This section of the Bowker declaration is relevant to support plaintiff's response to that argument. Defendant argues that Bowker's estimates of plaintiff's future performance assume "an extraordinary confluence of events." Def.'s Mot. to Strike at 7. That, however, goes to the credibility of Bowker's projections and the court's assessment of the merits of plaintiff's public-interest argument, not to the relevance of this declaration evidence or its appropriateness to the proffered use. Accordingly, the court finds that paragraphs 13–27 are properly admissible, *not* as a supplement to the administrative record, but as evidence relevant to the prospective relief being sought in this court.

### 2. Sections Wholly Irrelevant

As noted above, plaintiff cites the Bowker declaration *in toto*, in the last paragraph of its motion for judgment, as evidence relevant to the court's inquiry into the public interest in granting injunctive relief. Pl.'s Mot. for J. at 40. However, when pressed, by defendant's motion to strike, plaintiff cites only paragraphs 15–27 and 53–79 for this purpose. Pl.'s Opp'n to Def.'s Mot. to Strike at 14. In the court's view, this abrogates plaintiff's perfunctory citation to the entire declaration in its motion for judgment. In effect, this leaves plaintiff's motions and briefs devoid of any citation to paragraphs 28–52 of the declaration. The only exception is a gratuitous citation, to a single paragraph, offered to support publicly known facts, thus leaving the cited paragraph without any probative value. *See* Pl.'s Mot. for J. at 8 (citing Bowker Decl. ¶ 30). Because plaintiff does not cite this section of the Bowker declaration as evidence pertaining to the public interest or otherwise rely upon it to support any argument or allegation, the court need not examine its substance: it is irrelevant. Accordingly, paragraphs 28–52 of the Bowker declaration are stricken.

### 3. Sections Going to the Merits of NASA's Award Decision

The remainder of the Bowker declaration falls under the heading "Space-X and Orbital Sciences Corporation are Unlikely to Provide Resupply to the ISS Before PlanetSpace Can Do So." Bowker Decl. ¶¶ 53–79. This heading is so problematic that the court is tempted to declare the inadmissibility of this section to be self-evident. In the paragraphs that follow this heading, Bowker speculates about the likely future delays in performance by Space-X, *id.* ¶¶ 55–70, and Orbital, *id.* ¶¶ 71–79. Bowker begins this section with the conclusion that "the current ISS CRS contractors [Orbital and Space-X] are likely to miss their milestones as proposed on the ISS CRS." *Id.* ¶ 54.

Bowker bases his conclusion, in part, on delays in performance by the two contractors under *prior* contracts with NASA. *Id.* ¶¶ 55 (Space-X), 71–72 (Orbital). The primary basis for Bowker's conclusion, however, is his assessment of the inherent design challenges presented by the new launch

vehicles proposed by Space-X, *id.* ¶¶ 59–66, and Orbital, *id.* ¶¶ 74–78; this, of course, is juxtaposed against plaintiff's proposal to use an "existing launch vehicle" lauded by Bowker earlier in his declaration, *id.* ¶ 18.

There are two problems with this section of the Bowker declaration, and with plaintiff's attempt to proffer it as evidence bearing upon prospective relief. First, it is far too speculative.[1] *See, e.g.*, *Storman's Inc. v. Selecky*, 571 F.3d 960, 989 (9th Cir. 2009) ("[T]he court should weigh the public interest in light of the *likely* consequences of the injunction. Such consequences must not be too remote, insubstantial, or speculative and must be supported by evidence."). Second, when juxtaposed against the first half of the declaration, in which Bowker enumerates the merits of plaintiff's proposal, this section amounts to a comparative assessment of the strengths and weaknesses of the proposals put forth by plaintiff and the two intervenors. In other words, Bowker offers what is tantamount to his own "source selection statement" to counter that of NASA. This attempt to argue the correctness, rather than the reasonableness, of NASA's award decision is beyond the scope of this court's limited APA-type review. Admission of, or reliance upon, this type of declaration evidence is precisely what the *Axiom* panel rightly cautioned against.

Before concluding that this section of the Bowker declaration should be stricken from the record, however, the court needs to address the other purposes for which plaintiff cites several of the paragraphs therein.

First, as noted above, plaintiff cites to the Bowker declaration sixteen times in its statement of facts. *See* Pl.'s Mot. for J. at 6–8. Some of these citations duplicate citations to the record. *E.g.*, *id.* at 7 (citing both AR 29281 and Bowker Decl. ¶ 75). In other instances, plaintiff cites to statements in the declaration that, in turn, cite to *other* authority as the basis for the proffered fact. *E.g.*, *id.* at 6 (citing Bowker Decl. ¶¶ 55, 68, which, in turn, cite to GAO reports and publicly accessible NASA documents). The court need not recount other specific examples: all citations in the statement of facts that are made to this section (¶¶ 53–79) of the Bowker declaration go to facts that are already established by the administrative record, are publicly known, or are otherwise not in contention. The court cannot permit plaintiff to use these gratuitous citations as a pretext to gain the admission of declaration evidence that is otherwise inadmissible, and the sole use of which is impermissibly to re-argue the merits of NASA's award decision.

Second, plaintiff cites paragraphs 75–76 of the Bowker declaration to support its contentions concerning the foreign composition of the launch vehicle (the Taurus II) proposed to be used by Orbital. Pl.'s Mot. for J. at 27–29. Plaintiff argues that these paragraphs are properly admissible as

---

[1] The court notes again defendant's argument that the early part of Bowker's declaration, concerning plaintiff's ability to meet the revised schedule proffered in paragraph 14, is also highly speculative. Def.'s Mot. to Strike at 7 (arguing that "Bowker's estimates of PlanetSpace's future performance assume an extraordinary confluence of events," and "are not realistically moored to PlanetSpace's own *bona fides*."). The court is sympathetic to defendant's argument. However, because Bowker is plaintiff's prospective Chief Operating Officer, presumably possessing some familiarity with plaintiff's inner workings, his projections concerning PlanetSpace's future performance are admittedly far *less* speculative than his projections concerning the performance of competing businesses to which he has no ties.

evidence of a factor improperly ignored by NASA in reaching its award decision.  Pl.'s Opp'n to Def.'s Mot. to Strike at 7.  Plaintiff posits this as one of the *Esch* exceptions, permitting supplementation of the administrative record, that is still viable post-*Axiom*. *Id.* (citing *Totolo/King v. United States*, 87 Fed. Cl. 680, 692 (2009)).  As an initial matter, this court notes that the continuing post-*Axiom* viability of any given *Esch* exception remains unclear.  *See Axiom*, 564 F.3d at 1380–81 (concluding that "insofar as Esch departs from fundamental principles of administrative law . . . it is not the law of this circuit.").  In any case, the court need not decide this question here.  Paragraphs 75–76 of the Bowker declaration are inadmissible for much more basic reasons.  Paragraph 75 cites, as the *sole* basis for the assertions therein, an online news article that *post-dates* NASA's award decision, and thus goes to evidence that was not before the agency at the time of its selection.  In paragraph 76, Bowker states that he has "been informed" of a change in the composition of Orbital's launch vehicle.  Bowker Decl. ¶ 76.  This *unascribed* hearsay is inadmissible, under basic rules of evidence.  *See* FED. R. EVID. 802 (stating that hearsay is "not admissible" unless an exception applies); *Global Computer Enters., Inc. v. United States*, 88 Fed. Cl. 52, 70 (2009) (declining to consider hearsay evidence); *Cardinal Maint. Serv., Inc. v. United States*, 63 Fed. Cl. 98, 105 (2004) (same).

Because paragraphs 53–79 of the Bowker declaration have no bearing upon the public interest but go primarily to arguing the merits of NASA's award decision, and because plaintiff's other proffered uses for these paragraphs cannot support their admissibility, they are stricken.  Because they largely summarize or allude to the assertions made in *this* section of the declaration, paragraphs 11–12 are also stricken.

In summary, paragraphs 11–12 and 28–79 of the Bowker declaration are stricken from the record.  Admitted into evidence are paragraphs 1–10, which describe Bowker's background and experience, and paragraphs 13–27, which the court deems sufficiently relevant to its consideration of the public interest in the grant or denial of injunctive relief.

### *C. Kathuria Declaration*

Defendant has moved to strike sections III–V (¶¶ 26–37) of the Kathuria declaration.  Def.'s Mot. to Strike at 1.  The admission of sections I, II (¶¶ 1–25) is unopposed.

#### **1. Section III**

Section III of the declaration provides Kathuria's calculation of the price difference between the contract proposed by plaintiff and that proposed by, and ultimately awarded to, Orbital.  Kathuria Decl. ¶¶ 26–30.  Defendant argues that this section represents no more than Kathuria's mere "opinion" as to the magnitude of the price difference, Def.'s Mot. to Strike at 9, that plaintiff uses it to argue the merits of its bid protest, *id.*, and that it is otherwise "irrelevant," Def.'s Reply in Supp. of Def.'s Mot. to Strike at 9.  Plaintiff counters that deriving the price difference between plaintiff's and Orbital's proposals is a "technical matter," and that this section of the declaration is thus provided as a permissible "aid to the court."  Pl.'s Opp'n to Def.'s Mot. to Strike at 5.  Plaintiff supports the admissibility of this section under the "rule" allowing evidence "'useful in explaining

the filed administrative record.'" *Id.* at 6 (quoting *Career Training Concepts, Inc. v. United State*s, 83 Fed. Cl. 215, 225 (2008)).

The court agrees with plaintiff that there is enough technical detail involved in the calculation of the price difference for this section to be useful (though the court disagrees that any "rule" permits its admissibility). The court also agrees that the price difference is relevant to Count II of plaintiff's complaint, which alleges that NASA's SSA failed to make the requisite trade-off analysis, between price and mission suitability, in comparing plaintiff's and Orbital's proposals. *Id.* at 5; *see* Compl. ¶¶ 62–70. However, although the exact difference in price is a point of contention, *see* Orbital's Reply in Supp. of Orbital's Mot. for J. at 9, the fact that plaintiff's proposal was less expensive than Orbital's is not, *see* Orbital's Mot. for J. at 17–18. Therefore, Kathuria's estimate of the price difference seems relevant less to the SSA's purported failure to conduct a trade-off analysis than to the *correctness* of that analysis; this latter use would be impermissible. Moreover, plaintiff concedes that the price difference "can be derived from . . . portions of the administrative record." Pl.'s Opp'n to Def.'s Mot. to Strike at 5 (citing AR 6171-78, 6349, 10,966-71). Accordingly, these paragraphs are duplicative of material in the existing record, and their omission would not "frustrate effective judicial review." *See Axiom* 564 F.3d at 1381 (quoting *Pitts*, 411 U.S. at 142–43). Plaintiff's arguments in support of admitting this section thus fall short of meeting the standard for supplementation. *Id.* Accordingly, section III (¶¶ 26–30) of the Kathuria declaration is stricken.

### 2. Section IV

In section IV (¶¶ 31–35) of the declaration, Kathuria provides another calculation, this time estimating the "maximum amount of money that could have been spent by NASA on the two contracts [to Orbital and Space-X] to date." Kathuria Decl. ¶ 31. In support of its argument that the balance of hardships weighs in favor of granting injunctive relief, plaintiff cites section IV of the Kathuria declaration as evidence that the government has thus far expended limited funds under its contract obligations to Orbital and Space-X. Pl.'s Mot. for J. at 38 (citing Kathuria Decl. ¶ 35); *see also*, Pl.'s Opp'n to Def.'s Mot. to Strike at 11–12. Defendant's basis for its motion to strike this section of the Kathuria declaration seems limited to its assertion that Kathuria's estimate is speculative. Def.'s Mot. to Strike. at 9; Def.'s Reply in Supp. of Def.'s Mot. to Strike at 9. However, Kathuria does not speculate as to the amount that NASA has *actually* paid, but offers a calculation of the "*maximum* amount of money" that NASA *could* have paid, to date. Kathuria Decl. ¶ 35 (emphasis added). The court finds this calculation both useful and relevant to its inquiry as to the balance of hardships among the parties, if the court were to enjoin NASA to re-procure the ISS-CRS contracts, conceivably terminating its contract with Orbital and losing the funds expended to date. Accordingly, paragraphs 31–35 of the Kathuria declaration are properly admissible, *not* as a supplement to the administrative record, but as evidence relevant to the prospective relief being sought in this court.

### 3. Section V

In the bid-protest context, a showing of "prejudice" requires proof that there is "a substantial chance [that plaintiff] would have received the contract award but for [the agency's] errors in the bid process." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1358 (Fed. Cir. 2005) (internal quotations

and citations omitted). Count I of plaintiff's complaint alleges that NASA made a *de facto* finding of non-responsibility (an inability to perform the proposed contract), then failed to refer the matter to the Small Business Administration ("SBA"), as the Federal Acquisition Regulations require. Compl. ¶¶ 46–61; *see* FAR 19.601–19.602-1. Plaintiff cites section V of the Kathuria declaration as evidence of prejudice as to Count I, stating that "SBA routinely disagrees with adverse agency responsibility determinations." Pl.'s Mot. for J. at 35 (citing Kathuria Decl. ¶¶ 36–37); Pl.'s Opp'n to Def.'s Mot. to Strike at 9 (same). Defendant argues that section V offers nothing more than Kathuria's "musings" on the legal functions of SBA. Def.'s Mot. to Strike at 9.

Whether mere musing or not, this section of the declaration adds nothing to the record. Paragraph 36 simply states the regulatory requirement for referral to SBA, something for which the court need not look to Kathuria as authority. Paragraph 37 cites background statistics concerning the frequency with which SBA overturns a federal agency's determination of non-responsibility. Kathuria Decl. ¶ 37. Regardless of the accuracy of the statistics cited, they say little about SBA's likely responsibility determination in this *specific* instance. More importantly, defendant all but *concedes* prejudice as to Count I. Def.'s Mot. for J. at 45. Accordingly, paragraphs 36–37 of the declaration are stricken as irrelevant.

### III. Defendant's Motion to Correct the Administrative Record

The Space Policy requires that "United States government payloads shall be launched on space launch vehicles manufactured in the United States, unless exempted by the Director of the Office of Science and Technology Policy, in consultation with the Assistant to the President for National Security Affairs."[2] Plaintiff alleges that NASA's contract award to Orbital was arbitrary and capricious due, in part, to deficiencies in NASA's determination of the compliance with the Space Policy of Orbital's proposed launch vehicle (the Taurus II). Compl. ¶¶ 88–94 (Count V).

Defendant has moved to correct the administrative record, submitting for inclusion two documents that NASA's Source Evaluation Board relied upon in assessing Orbital's compliance with the Space Policy. Def.'s Mot. to Correct at 1–2.

The first document (Exhibit 1) is "a one-page summary of the foreign content of Orbital's cargo vehicle," which had been sent as an attachment to an email already in the record, *id.* at 2; admission of this document is unopposed, Pl.'s Opp'n to Def.'s Mot. to Correct at 1.

The second document (Exhibit 2) is "an inter-agency memorandum that memorializes the Office of Science and Technology Policy's determination with respect to the Taurus II vehicle's eligibility to launch United States payloads without additional exemptions or waivers." Def.'s Mot. to Correct at 2. Exhibit 2 (the "OSTP memorandum") was generated in connection with a 2007 Commercial Orbital Transportation Services ("COTS") procurement. Pl.'s Opp'n to Def.'s Mot. to Correct at 3. Defendant asserts that the OSTP memorandum "directly informed" NASA's consideration of whether Orbital's launch vehicle complied with the Space Policy, Def.'s Reply in

---

[2] *See* http://www.ostp.gov/galleries/Issues/Space_Transportation_Policy05.pdf, at p.7.

Supp. of Def.'s Mot. to Correct. at 2, and "contributed to the Source Selection Authority's procurement decision," *id*. at 3, in the ISS-CRS procurement.

In its "conditional opposition," plaintiff asks the court to deny the admission of the OSTP memorandum, *"unless* [defendant] is required also to supplement the record with other essential documents relevant to NASA's consideration of the foreign content of the Taurus II during the COTS competition." Pl.'s Opp'n to Def.'s Mot. to Correct at 1. Plaintiff argues that the OSTP memorandum, by itself, "'skew[s] the record in [defendant's] favor by excluding pertinent . . . information.'" *Id.* at 2 (quoting *Fund for Animals v. Williams*, 391 F. Supp. 2d 191, 197 (D.D.C. 2005)). In particular, plaintiff asks the court to require defendant to include additional "information as to the Taurus II configuration at the time of the COTS procurement." *Id.* at 3.

Plaintiff's "conditional opposition" is a *de facto* motion to supplement the record, and an inappropriate response to defendant's motion. More importantly, plaintiff does not contest *any* of defendant's assertions that NASA's SSA relied upon the OSTP memorandum, along with the conclusions memorialized therein, in reaching its award decision. Indeed, plaintiff explicitly cites this reliance as one of the unlawful agency errors supporting plaintiff's bid protest and claim for relief. Pl.'s Reply in Supp. of Pl.'s Mot. for J. at 17 (citing to the record already before the court, at AR 6316).

Because the OSTP memorandum was directly relied upon by NASA to reach its source selection decision in the ISS-CRS procurement, it is properly among the "core documents" of the administrative record. RULES OF THE COURT OF FEDERAL CLAIMS, App. C, ¶ 22 (o). Accordingly, defendant's motion to correct the administrative record is granted; Exhibits 1 and 2 are hereby admitted.

## IV. Conclusion

For the foregoing reasons, (1) defendant's motion to correct the administrative record is granted, and (2) defendant's motion to strike is granted-in-part, and denied-in-part, whereby (a) the Lounge declaration is stricken in its entirety, (b) paragraphs 11–12, 28–79 of the Bowker declaration are stricken, but paragraphs 1–10, 13–27 are admitted, and (c) paragraphs 26–30, 36–37 of the Kathuria declaration are stricken, but paragraphs 1–25, 31–35 are admitted.

**IT IS SO ORDERED.**

*s/Lawrence J. Block*

Lawrence J. Block
Judge