████████████████

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS
### Bid Protest

PLANETSPACE INC.,

      *Plaintiff,*

  v.

UNITED STATES OF AMERICA,

      *Defendant,*

  and

SPACE EXPLORATION TECHNOLOGIES
CORPORATION

  and

ORBITAL SCIENCES CORPORATION,

      *Defendants-Intervenors.*

| REDACTED VERSION |
| --- |

No. 09-476C

Hon. Lawrence J. Block

████████████████

---

**DEFENDANT-INTERVENOR SPACE EXPLORATION TECHNOLOGIES CORPORATION'S RESPONSE TO PLAINTIFF PLANETSPACE INC.'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND FOR PERMANENT INJUNCTIVE RELIEF AND CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

RICHARD J. VACURA
    *Counsel of Record*
KERIC B. CHIN
MARC A. HEARRON
MORRISON & FOERSTER LLP
1650 Tysons Boulevard, Suite 400
McLean, Virginia 22102
Telephone: 703.760.7700
Facsimile: 703.760.7777
E-mail: RVacura@mofo.com

*Counsel for Defendant-Intervenor*
*Space Exploration Technologies*
*Corporation*

September 18, 2009

████████████

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................iii

INTRODUCTION ........................................................................................... 1

COUNTER-STATEMENT OF FACTS ............................................................. 2

    A.    NASA Issues An RFP For ISS Resupply Services ................................. 2

    B.    The SEB Evaluates The Proposals By SpaceX, Orbital, And PlanetSpace ............................................................................................ 3

    C.    The SSA Evaluates The Proposals, And NASA Awards Contracts To SpaceX And Orbital ........................................................ 5

        1.    SpaceX was awarded a contract after its proposal was selected as highest rated and lowest price ................................. 5

        2.    The SSA's deep concerns about PlanetSpace's proposal resulted in his selection of Orbital's proposal over PlanetSpace's for the second contract .......................................... 6

    D.    PlanetSpace Unsuccessfully Protests Before The GAO And Files The Instant Challenge ......................................................................... 10

ARGUMENT ................................................................................................. 10

I.    THE SSA DID NOT MAKE A FINDING THAT PLANETSPACE WAS NONRESPONSIBLE, AND THEREFORE THERE WAS NO BASIS FOR REFERAL TO THE SBA FOR A RESPONSIBILITY DETERMINATION (COUNT I) ................................................................. 10

    A.    The Consideration Of Traditional Responsibility Factors In A Comparative Analysis Of Competing Proposals Does Not Constitute A Responsibility Determination ......................................... 11

    B.    No Referral To The SBA Was Required Because The SSA Did Not Find That PlanetSpace Was Nonresponsible ................................. 14

        1.    The SSA decided not to award to PlanetSpace based on a comparative evaluation of the proposals, not a finding that PlanetSpace was nonresponsible ......................................... 14

        2.    PlanetSpace's criticisms of specific findings made by the SSA mischaracterize those findings as responsibility determinations, when they were actually part of the comparative analysis required by the RFP .............................. 17

    C.    In The Alternative, No Referral To The SBA For A Responsibility Determination Was Required Because PlanetSpace Is Not A Small Business Under The "Ostensible Subcontractor" Rule ......................................................................... 24

████████████████████

    1.    Under the "ostensible subcontractor" rule, a small business concern and its subcontractor must be aggregated together for size-determination purposes if the small business places unusual reliance on the subcontractor ...................................................... 25

    2.    Because PlanetSpace's proposal was to delegate all the technical elements of the contract to large subcontractors, PlanetSpace cannot be considered a small business concern for purposes of this solicitation ..................... 27

II.    THE SSA DID NOT CONSIDER FACTORS OTHER THAN THOSE ESTABLISHED IN THE RFP IN EVALUATING PLANETSPACE'S PROPOSAL (COUNT III) ................................................................. 29

III.    NASA PROPERLY EVALUATED PLANETSPACE'S PAST PERFORMANCE AS REQUIRED BY THE RFP SPECIFICATIONS (COUNT IV) ........................................................................... 31

IV.    THE SSA ARTICULATED A RATIONAL BASIS FOR ASSESSING THE FINANCIAL RISKS ASSOCIATED WITH PLANETSPACE'S PROPOSAL AS A SIGNIFICANT WEAKNESS AND A DISCRIMINATOR FOR SELECTION (COUNT VI)....................................... 34

V.    PLANETSPACE IS NOT ENTITLED TO DECLARATORY OR INJUNCTIVE RELIEF............................................................................. 37

CONCLUSION.................................................................................................. 39

**TABLE OF AUTHORITIES**

Page

CASES:

*Advanced Resources Int'l, Inc.*, No. B-249679.2, 93-1 C.P.D ¶ 348,
    1993 WL 145295 (Apr. 29, 1993)...................................................... 12, 14, 15

*Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531 (1987) .................................... 37

*Banknote Corp. of Am., Inc. v. United States*, 56 Fed. Cl. 377 (2003) ........... 29, 30, 31

*Celtech, Inc. v. United States*, 24 Cl. Ct. 269 (1991)................................... 16

*Computer Scis. Corp. v. United States*, 51 Fed. Cl. 297 (2002)................................... 36

*DCMS-ISA, Inc. v. United States*, 84 Fed. Cl. 501 (2008)........................................ 11

*Delta Data Sys. Corp. v. Webster*, 744 F.2d 197 (D.C. Cir. 1984)............................... 12

*Dynamic Aviation Helicopters*, No. B-274122, 96-2 C.P.D. ¶ 166,
    1996 WL 632673 (Nov. 1, 1996) ................................................ 12, 13, 20

*Fabritech, Inc.*, No. B-298247.2, 2006 CPD ¶ 112,
    2006 WL 2098680 (July 27, 2006)................................................... 16, 17

*Forestry Surveys & Data v. United States*, 44 Fed. Cl. 493 (1999) ........................... 29

*Gentex Corp. v. United States*, 58 Fed. Cl. 634 (2003)................................... 39

*Impresa Construzioni Geom. Domenico Garufi v. United States*,
    238 F.3d 1324 (Fed. Cir. 2001)................................................... 36

*IPlus, Inc.*, No. B-298020.2, 2006 CPD P 90,
    2006 WL 1702640 (Jun. 5, 2006) ................................................ 32, 33

*J.A. Farrington Janitorial Services*, No. B-296875, 2005 CPD ¶ 187,
    2005 WL 3005742 (Oct. 18, 2005) ........................................ 33

*J. Womack Enters., Inc.*, No. B-299344, 2007 C.P.D. ¶ 69,
    2007 WL 1121761 (Apr. 4, 2007)................................................... 12

*Overstreet Elec. Co. v. United States*, 59 Fed. Cl. 99 (2003)........................ 36

*PGBA, LLC v. United States*, 389 F.3d 1219 (Fed. Cir. 2004) ........................ 37, 38

*R.L. Campbell Roofing Co.*, No. B-289868, 2003 C.P.D. ¶ 37,
    2002 WL 31999216 (May 10, 2002)................................................... 13

iii

*Size Appeal of Taylor Consultants, Inc.*, No. SIZ-4775,
   2006 WL 1484895 (S.B.A. Apr. 7, 2006) .................................................. 27

*Size Appeal of TCE Inc.*, No. SIZ-5003, 2008 WL 4694573 (S.B.A. Sept. 24,
   2008)........................................................................................................... 25

*Size Appeal of TKTM Corp.*, No. SIZ-4885,
   2008 WL 541394 (S.B.A. Jan. 31, 2008) ................................................ 26

*Size Appeal of Video Masters, Inc.*, No. SIZ-4984,
   2008 WL 5192388 (S.B.A. Aug. 20, 2008)............................................... 26

*T. Head & Co.*, No. B-275783, 97-1 C.P.D. ¶ 169,
   1997 WL 240835 (Mar. 27, 1997)................................................... 13, 16

*WorldTravelService v. United States*, 49 Fed. Cl. 431 (2001) .................... 36

*YRT Servs. Corp. v. United States*, 28 Fed. Cl. 366 (1993) ....................... 11

*Zolon Tech, Inc.*, No. B-299904.2, 2007 C.P.D. ¶ 183,
   2007 WL 2874045 (Sept. 18, 2007) ........................................ 12, 13, 15

STATUTES:

10 U.S.C.
   § 2305(a)(3) .......................................................................................... 14
   § 2305(b)(1) ............................................................................... 14, 15, 29
28 U.S.C. § 1491(b)(3)................................................................................ 38

OTHER AUTHORITIES:

13 C.F.R.
   § 121.103(a)(1) ..................................................................................... 25
   § 121.103(a)(6) ..................................................................................... 25
   § 121.103(h).......................................................................................... 25
   § 121.103(h)(4) ......................................................................... 25, 26, 28
48 C.F.R.
   § 9.104-1(c) .............................................................................. 13, 14, 21
   § 9.104-1(e) ................................................................................... 14, 21
   § 15.001 ................................................................................................ 35
   § 15.101-1............................................................................................... 2
   § 15.303(b)(4) ...................................................................................... 29
   § 15.305(a) ........................................................................................... 14
   § 15.305(a)(2) ...................................................................................... 14
   § 19.601(c) (2006)................................................................................ 11

████████████████████

## INTRODUCTION

In this action, plaintiff PlanetSpace, Inc. protests the award of contracts by the National Aeronautics and Space Administration (NASA) to defendants-intervenors Space Exploration Technologies Corporation (SpaceX) and Orbital Sciences Corporation (Orbital). NASA awarded the contracts pursuant to a request for proposals (RFP) for services to resupply the International Space Station (ISS) from 2010 to 2015.

For the reasons stated herein, this Court should deny PlanetSpace's challenge to the awards. PlanetSpace cannot demonstrate that NASA's selection of SpaceX and Orbital was arbitrary and capricious or that NASA violated statutes or regulations in its award. Contrary to PlanetSpace's arguments, NASA was not required to refer this matter to the Small Business Administration (SBA) for a determination of whether it was a responsible contractor. And NASA thoroughly articulated a rational basis for its selection, which it had broad discretion to make. Further, PlanetSpace has not made a showing of entitlement to injunctive relief. Accordingly, the protest should be denied.

But even if PlanetSpace could prevail on the merits, it should not in any way affect the contract that NASA awarded to SpaceX. SpaceX's proposal was rated highest out of all three proposals and was the lowest price. Moreover, although PlanetSpace initially challenged the SpaceX award before the Government Accountability Office (GAO), it dropped that challenge and instead protested only the award to Orbital. And before this Court, PlanetSpace concedes that even if it

████████████████████████████

were to prevail in this case it would, at most, "likely result in the displacement of only a single contractor," i.e., Orbital.  PlanetSpace Mem. 37.

## COUNTER-STATEMENT OF FACTS

**A.    NASA Issues An RFP For ISS Resupply Services**

NASA issued RFP No. NNJ08ZBG001R on April 14, 2008, seeking to award at least one indefinite-delivery/indefinite-quantity contract for the supply of cargo from NASA to the ISS the return of cargo from the ISS to NASA, and the disposal of unneeded cargo from the ISS.  AR 1978.  NASA issued the RFP to fill the gap in ISS resupply services that will otherwise be created by the scheduled end of NASA's Space Shuttle Program in 2010.  The total maximum value for each contract was $3.1 billion.  AR 1925, 2062.

The RFP provided that the award would be made according to the tradeoff process described in 48 C.F.R. § 15.101-1.  AR 2089.  Under that process, the government may make "tradeoffs among cost or price and non-cost factors" and may thereby "accept other than the lowest priced proposal." 48 C.F.R. § 15.101-1 (2008). The RFP ranked Mission Suitability as "more important than Price."  AR 2089.

The Mission Suitability factor was to be weighted and scored numerically, on a scale of 1000 possible points, with three subfactors:  Technical Approach, Management Approach, and Small Business Utilization.  *Id.*  The Technical Approach subfactor was worth a possible 550 points and contained 4 elements:  (1) system capabilities and summary of performance, (2) ISS integration and demonstration, (3) ISS resupply mission performance plan, and (4) risks.  AR 2089-2091.  The Management Approach subfactor was worth a possible 400 points and

████████████████████████

contined 3 elements:  (1) company information, (2) performance milestones, and (3) safety and mission assurance.  AR 2089, 2091.  The Small Business Utilization subfactor was worth a possible 50 points.  AR 2089.

Past performance was not to be scored as a separate subfactor within Mission Suitability; rather, past performance was to be evaluated as part of each distinct subfactor.  AR 2090.  The RFP directed that for "an offeror without a record of relevant past performance or for whom information on past performance is not available, the offeror will not be evaluated favorably or unfavorably on past performance." *Id.*

B.   **The SEB Evaluates The Proposals By SpaceX, Orbital, And PlanetSpace**

NASA received fully responsive, competitive proposals from three offerors: SpaceX, Orbital, and PlanetSpace.  After thoroughly evaluating the proposals, the NASA Source Evaluation Board (SEB) assigned a Mission Suitability score of 877 points to SpaceX's proposal, 796 points to Orbital's proposal, and 827 points to PlanetSpace's proposal.  AR 4470.

The SEB gave SpaceX's proposal three significant strengths, twelve strengths, no weaknesses, no significant weaknesses, and no deficiencies within the Technical Approach subfactor.  It was evaluated as having significant strengths for

████████████████████████████

████████████████.  AR 4791-4798, 5169-5170.  In the Management Approach subfactor, SpaceX's proposal was awarded one significant strength, four strengths, two weaknesses, no significant weaknesses, and no deficiencies.  ████████████

3

████████████

████████████

████████████

AR 4831-4833, 5170.

Orbital's proposal was evaluated as having one significant strength, five strengths, four weaknesses, no significant weaknesses, and no deficiencies in its Technical Approach. AR 4588-4591, 5167. In its Management Approach, Orbital's proposal was assessed as having three significant strengths, three strengths, one weakness, no significant weaknesses, and no deficiencies. AR 4626-4633, 5167.

PlanetSpace's proposal was unique in that PlanetSpace proposed a "teaming approach," whereby it would subcontract out all of the key technical aspects of the contract and would itself perform only the contract administration and financial management tasks. *See* AR 10235-10240, 10455, 10594-10598, 29164. PlanetSpace's proposal identified three key subcontractors that would perform the technical tasks of the ISS resupply services: Lockheed Martin Space Systems Company (Lockheed); Alliant Techsystems, Inc. (ATK); and The Boeing Company (Boeing). Approximately ████ of the overall contract would be subcontracted to these three key subcontractors. AR 2600, 2606; Supp. AR 31758. Although the contract with NASA was to be a fixed-price contract, PlanetSpace proposed that the subcontracts with Lockheed and ATK for the early stages of the work would be paid on a cost-plus basis. AR 4756, 10605-10608; Supp. AR 31758.

The SEB gave PlanetSpace's proposal three significant strengths, four strengths, three weaknesses, no significant weaknesses, and no deficiencies for its

████████████████████

Technical Approach, and three significant strengths, four strengths, five weaknesses, no significant weaknesses, and no deficiencies in its Management Approach.   AR 4679-4680, 4725, 5168.   Among the significant strengths, PlanetSpace was assigned a significant strength in the System Capabilities and Summary of Performance element of the Technical Approach subfactor based on the past performance of its subcontractors.   AR 4681-4682.   The SEB also gave PlanetSpace a significant strength in the Company Information element of the Management Approach subfactor based in large part on the history of its subcontractors' successes.   AR 4726-4727.

SpaceX and PlanetSpace were both rated as "Very Good" in the Small Business Utilization subfactor, and Orbital was assigned a rating of "Good." AR 4677.

SpaceX's proposal had the lowest overall price, followed by PlanetSpace's, and then Orbital's.   AR 4871.

## C.   The SSA Evaluates The Proposals, And NASA Awards Contracts To SpaceX And Orbital

### 1.   *SpaceX was awarded a contract after its proposal was selected as highest rated and lowest price*

The NASA Source Selection Authority (SSA) evaluated the SEB's findings to make a determination about which of the proposals provided the best value to NASA.   Part of the SSA's role was to bring his "independent judgment" to bear on the SEB's findings.   AR 5172.   The SSA issued a Source Selection Statement in which he "agreed with all the findings the SEB made regarding any of the offerors"

██████████████████████

but "did not always agree with the significance the SEB placed on a particular finding or with the impacts the SEB identified in regards to a finding." *Id.*

The SSA agreed with the SEB that SpaceX had the highest-rated proposal among the non-price factors.  AR 5179.  The SSA was impressed that (1) SpaceX's proposal called for █████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████.  *Id.*  Because SpaceX had the approach that was strongest in terms of Mission Suitability and that also had the lowest price, the SSA awarded SpaceX a contract for the ISS resupply services, calling it a "clear choice." AR 5181.

### 2. The SSA's deep concerns about PlanetSpace's proposal resulted in his selection of Orbital's proposal over PlanetSpace's for the second contract

The SSA decided that an award of two contracts would best ensure the success of the ISS Program after the conclusion of the Space Shuttle Program.  *Id.* Accordingly, he performed a comparative analysis of the proposals by Orbital and PlanetSpace to determine which of them was superior and would be awarded the second contract.  The SSA ultimately ████████████████████████

████████████████████████████████████████████

████████  *Id.*  Even though PlanetSpace's proposal had a lower price than

6

██████████████████████

Orbital's, the SSA found that █████████████████████████

████████████████████ that he awarded the second contract to Orbital.

*Id.*

The SSA's concerns about PlanetSpace's proposal were multitudinous. The SSA did not disagree with any of the SEB's findings, but in several instances he assigned a different weight or believed a finding was a discriminator for selection.

With regard to the Technical Approach subfactor, the SSA first disagreed that the past performance of PlanetSpace's subcontractors was a significant strength in its proposal, because PlanetSpace itself lacked experience in development, production, and operation of complex space systems. AR 5174-5175. Instead, the SSA—following the RFP's directive that lack of past performance would not result in an unfavorable rating—concluded that the past performance was not relevant for selection purposes. AR 5175. Second, the SSA believed that PlanetSpace's proposal to use two different launch vehicles, which the SBE had scored as a weakness, was a significant weakness and a discriminator for selection. *Id.* PlanetSpace proposed to use an alternate launch vehicle ████████████ to provide initial cargo delivery starting in December 2011 until its proposed new launch vehicle (Athena III) was ready. But even under that proposal, PlanetSpace would not be able to meet the cargo resupply requirements until late in 2011, and the use of two launch vehicles would require additional verification and integration and therefore presented technical and scheduling risks to NASA. *Id.* The SSA also noted two significant technical challenges that the SEB identified as weaknesses:

7



■. AR 5175-5176.

With regard to the Management Approach subfactor, the SSA concluded that three of the five weaknesses that the SBE identified with PlanetSpace's proposal were actually significant weaknesses. First, even though the contract with NASA would be a fixed-price contract, PlanetSpace's subcontracts with large subcontractors Lockheed and ATK would be cost-plus subcontracts until first flight, meaning that PlanetSpace and not the subcontractors would bear the risk of any cost overruns by its large subcontractors. AR 5176. The SSA ███████████ ██████████████████████████████████████████████████ ████████████████████████ so as to prevent significant cost overruns that may jeopardize PlanetSpace's ability to perform. *Id.* Second, the SSA was concerned that PlanetSpace's proposal presented ██████████████████████ because the proposal set forth an overly aggressive timetable for ISS integration, which was a significant milestone that would trigger contract payment by NASA. AR 5177. NASA believed that PlanetSpace would not be able to complete, and would thus not be paid for, ISS integration until at least nine months later than PlanetSpace's assumption. AR 4761; Supp. AR 31760. When combined with the fact that even with its unrealistic assumption, PlanetSpace would not realize

██████████████████████████

positive cash flow until nearly the end of the contract, the SSA concluded that the possibility of delays in ISS integration jeopardized the financial viability of the proposal. AR 5177. And third, the SSA was concerned about inadequacies in how PlanetSpace's proposal addressed acquiring the requisite licenses and permits from the Federal Aviation Administration, concluding that this ████████████████ ██████████████████████████████ of the commercial resupply services. *Id.*

Analyzing PlanetSpace's proposal as a whole, the SSA noted that a strong management approach could overcome the significant technical challenges presented in PlanetSpace's proposal. *Id.* But because PlanetSpace also had several significant weaknesses in its management approach, the SSA believed that the ██████████████████████████████ *Id.*

Even over and above these concerns, Orbital's proposal was superior to PlanetSpace's in another key respect: whereas PlanetSpace did not offer to provide the full range of resupply services until the end of 2013, Orbital offered the full range in 2012. AR 5179. Additionally, the SSA preferred Orbital's proposed use of existing processes and tools and the use of in-house technical expertise over PlanetSpace's proposal to shift the responsibility of all the technical aspects of the contract to subcontractors. AR 5180. This was especially the case in light of PlanetSpace's lack of relevant experience managing fixed-price contracts that were this complex. *Id.*

███████████████████████

Consequently, the SSA concluded that Orbital's proposal was superior in both the Technical Approach and the Management Approach subfactors within the Mission Suitability factor. And even though Orbital's proposal was at a price disadvantage, the SSA awarded the second contract to Orbital because of the low likelihood that PlanetSpace would be able to successfully perform the contract. AR 5181.

**D.    PlanetSpace Unsuccessfully Protests Before The GAO And Files The Instant Challenge**

PlanetSpace initially filed a protest with the GAO in which it challenged both the awards to SpaceX and to Orbital, on essentially the same bases as this action. But PlanetSpace then dropped its challenge to SpaceX's contract award. Supp. AR 31762. The Comptroller General denied PlanetSpace's protest and sustained the award to Orbital. Supp. AR 31771. PlanetSpace then filed the instant challenge before this Court.

**ARGUMENT**

**I.    THE SSA DID NOT MAKE A FINDING THAT PLANETSPACE WAS NONRESPONSIBLE, AND THEREFORE THERE WAS NO BASIS FOR REFERAL TO THE SBA FOR A RESPONSIBILITY DETERMINATION (COUNT I)**

PlanetSpace argues that the SSA rejected PlanetSpace on the basis of a finding of nonresponsibility when he concluded that PlanetSpace had a remote likelihood of successful performance of the contract. But that argument mischaracterizes the basis for the SSA's selection of SpaceX's and Orbital's proposals over PlanetSpace's. It is plain that the SSA never found that PlanetSpace was not responsible to perform the contract; instead, he used the criteria

10

████████████████████████

established in the RFP to perform a comparative analysis of the submitted proposals and concluded that the proposals submitted by SpaceX and Orbital were superior to PlanetSpace's.  The fact that certain of the RFP criteria that the SSA considered overlapped with the traditional factors used in making a responsibility determination does not transform the SSA's comparative source selection process into a responsibility finding.  Indeed, decisions from this Court and the GAO make clear that traditional responsibility factors may be used in performing a comparative analysis of the submissions without making a referral to the SBA.  Accordingly, contrary to PlanetSpace's argument, there was no basis for the SSA to refer PlanetSpace to the SBA for a determination of responsibility.

A.   **The Consideration Of Traditional Responsibility Factors In A Comparative Analysis Of Competing Proposals Does Not Constitute A Responsibility Determination**

This Court has recognized that an agency may consider traditional responsibility factors when it evaluates competing proposals and that the use of such factors does not constitute a responsibility determination.  *See YRT Servs. Corp. v. United States*, 28 Fed. Cl. 366, 394 (1993).  Because the inclusion of responsibility factors in a comparative evaluation is distinct from a determination of responsibility itself, no referral to the SBA is required simply because responsibility factors are considered.  *See DCMS-ISA, Inc. v. United States*, 84 Fed. Cl. 501, 516 n.29 (2008) (referral to SBA required only where small business concern is an "apparent successful business offeror" under the comparative evaluation of the proposals (emphasis omitted) (quoting 48 C.F.R. § 19.601(c) (2006))).

11

████████████████████████

Likewise, the D.C. Circuit has held that when an agency is evaluating a proposal by a small business concern, "responsibility factors may be considered in the course of proposal evaluation without referral to the SBA." *Delta Data Sys. Corp. v. Webster*, 744 F.2d 197, 203 (D.C. Cir. 1984) (Scalia, J.).

The use of responsibility factors in evaluating proposals also finds strong, enduring support in decisions of the GAO. The GAO has long held that responsibility factors are among the considerations that may go into a *comparative* evaluation of the submitted proposals when the solicitation calls for their consideration: "An agency may use traditional responsibility factors . . . as technical evaluation factors where . . . a comparative evaluation of those areas is to be performed." *J. Womack Enters., Inc.*, No. B-299344, 2007 C.P.D. ¶ 69, 2007 WL 1121761, at *7 (Apr. 4, 2007); *see also Advanced Resources Int'l, Inc.*, No. B-249679.2, 93-1 C.P.D ¶ 348, 1993 WL 145295, at *2 (Apr. 29, 1993) ("[W]e have long recognized that traditional responsibility factors may be used for the comparative evaluation of proposals in relevant areas and that where a proposal is determined to be deficient pursuant to such an evaluation, the matter is one of technical unacceptability not requiring referral to the SBA." (citations omitted)).

A comparative evaluation is one where competing proposals are rated on a scale relative to each other rather than on a pass/fail basis. *Zolon Tech, Inc.*, No. B-299904.2, 2007 C.P.D. ¶ 183, 2007 WL 2874045, at *6 (Sept. 18, 2007); *J. Womack Enters.*, 2007 WL 1121761, at *7; *Dynamic Aviation Helicopters*, No. B-274122, 96-2 C.P.D. ¶ 166, 1996 WL 632673, at *2 (Nov. 1, 1996). Where a comparative analysis

using responsibility factors reveals that a proposal is deficient relative to others, "the matter is one of *relative* technical merit, not unacceptability" or nonresponsibility, and no referral to the SBA is required. *R.L. Campbell Roofing Co.*, No. B-289868, 2003 C.P.D. ¶ 37, 2002 WL 31999216, at *9 (May 10, 2002) (emphasis added); *see also Dynamic Aviation Helicopters*, 1996 WL 632673, at *2.

"SBA referral is mandatory only where a traditional responsibility-type factor . . . is evaluated on a pass/fail basis and the contracting agency has determined that a small business's proposal should be rejected for failure to 'pass' that factor." *T. Head & Co.*, No. B-275783, 97-1 C.P.D. ¶ 169, 1997 WL 240835, at *2 (Mar. 27, 1997). Where, instead, the RFP calls for a comparative evaluation of the proposals using a traditional responsibility factor and the SSA evaluates the small business's proposal according to the scheme set forth in the RFP and finds it deficient to other proposals, the SSA does not make any de facto finding of nonresponsibility, and there is no requirement to make a referral to the SBA. *Id.*; *Zolon Tech*, 2007 WL 2874045, at *6 ("No SBA referral is required where a small business offeror's proposal, while evaluated as acceptable, is not selected for award because another offeror's proposal is evaluated as superior under a comparative analysis" using traditional responsibility factors.).

Indeed, both statutes and the Federal Acquisition Regulation (FAR) specifically contemplate the evaluation of responsibility factors in the agency's evaluation of the proposals, apart from any determination of responsibility. Among the requirements that a contractor must meet to be deemed responsible are a

13

████████████████████

satisfactory performance record, 48 C.F.R. § 9.104-1(c); requisite "technical skills," *id.* § 9.104-1(e); and the necessary "experience," *id.* But Congress provided that these responsibility factors could be included in the RFP as considerations to be used in evaluating competing proposals. *See* 10 U.S.C. § 2305(a)(3) ("evaluation factors" may "includ[e] technical capability, . . . prior experience, and past performance of the offeror"). And Congress directed that the *agency* would perform that evaluation, *see id.* § 2305(b)(1), rather than it being performed by the SBA in the Certificate of Competency (COC) process. *Advanced Resources Int'l*, 1993 WL 145295, at *2. Moreover, even though "satisfactory performance record" is a responsibility requirement, 48 C.F.R. § 9.104-1(c), the FAR requires agencies to assess each responsible offeror's comparative ability to perform the contract successfully and states that "past performance" is an indicator of such ability to be considered in the evaluation, *id.* § 15.305(a), (a)(2). "This comparative assessment of past performance information is *separate* from the [formal] responsibility determination . . . ." *Id.* § 15.305(a)(2) (emphasis added).

**B.    No Referral To The SBA Was Required Because The SSA Did Not Find That PlanetSpace Was Nonresponsible**

   *1.   The SSA decided not to award to PlanetSpace based on a comparative evaluation of the proposals, not a finding that PlanetSpace was nonresponsible*

The notion that the SSA found PlanetSpace to be a nonresponsible offeror is without support in the record. Instead, it is beyond question that the SSA evaluated the proposals submitted by SpaceX, Orbital, and PlanetSpace according

████████████████████████████████████

to the selection criteria set forth in the RFP and declined to select PlanetSpace's proposal because he found it to be comparatively inferior to SpaceX's and Orbital's.

PlanetSpace can point to nowhere in the Source Selection Statement where the SSA purports to make any responsibility determination with respect to PlanetSpace's ability to perform the prospective contract. Nor can PlanetSpace identify any de facto finding of nonresponsibility by pointing to a "pass/fail" finding with regard to PlanetSpace's capabilities that disqualified PlanetSpace from consideration outright, even though such a finding is the hallmark of a nonresponsibility determination. *See Zolon Tech*, 2007 WL 2874045, at *6.

Instead, NASA thoroughly evaluated each of the proposals submitted by SpaceX, Orbital, and PlanetSpace according to the factors and subfactors listed in the RFP, and then the SSA performed a "Comparative Assessment," AR 5179, concluding that SpaceX's proposal was highest rated and that PlanetSpace's was lowest rated. Comparing Orbital's proposal with PlanetSpace's, the SSA selected Orbital's because he ███████████████████████████████ ████████████████  AR 5180. That comparative analysis of the RFP's technical and management criteria is within the purview of NASA, not the SBA in a COC process. *See* 10 U.S.C. § 2305(b)(1) (agency to evaluate RFP evaluation factors); *Advanced Resources Int'l*, 1993 WL 145295, at *2.

Thus, PlanetSpace mischaracterizes the SSA's decision when it claims that the SSA made a nonresponsibility finding by concluding that the ████████████ ████████████████████████████████████████  Pl. Br. 16 (quoting

15



AR 5177) (first alteration in original).  The SSA did not make that conclusion as part of a pass/fail requirement that disqualified PlanetSpace's submission outright—irrespective of Orbital's proposal—which would have been a finding of nonresponsibility, *see T. Head & Co.*, 1997 WL 240835, at *2.  Rather, the SSA "compared these two proposals" and found that Orbital's proposal created a greater likelihood of successful performance:   whereas

Orbital's proposal contained a

AR 5179-5180.  That is, the SSA did not find that PlanetSpace was nonresponsible; he simply selected Orbital's proposal over PlanetSpace's because he

AR 5180.  No referral to the SBA was required to make that selection.  *See, e.g., T. Head & Co.*, 1997 WL 240835, at *2.

Accordingly, PlanetSpace's reliance on *Celtech, Inc. v. United States*, 24 Cl. Ct. 269 (1991), and *Fabritech, Inc.*, No. B-298247.2, 2006 CPD ¶ 112, 2006 WL 2098680 (July 27, 2006), is misplaced, as those cases are distinguishable.  The Court in *Celtech* held that referral to the SBA was required when the government found that a contractor was nonresponsible because its accounting system was "*unacceptable* for recording costs on Government contracts." *Celtech*, 24 Cl. Ct. at

277. There, the government rejected the proposal not because it was comparatively inferior to other proposals but because, wholly apart from its proposal or the other proposals submitted, the offeror lacked the requisite accounting system to be considered. Here, by contrast, the SSA did not disqualify PlanetSpace outright but instead found that the proposals by SpaceX and Orbital were superior. And in *Fabritech*, the GAO concluded that the agency made a responsibility determination when it rejected a proposal based upon a finding that the offeror would be unable to obtain necessary parts to perform the contract even though there was no provision in the RFP calling for consideration of an offeror's approach to obtaining parts. By contrast, here PlanetSpace cannot point to any consideration evaluated by the SSA that was not part of a subfactor required to be considered in the Mission Sustainability section of the RFP.

> 2. ***PlanetSpace's criticisms of specific findings made by the SSA mischaracterize those findings as responsibility determinations, when they were actually part of the comparative analysis required by the RFP***

> > a. *The SSA correctly compared the risks associated with PlanetSpace's management approach with the other submissions*

PlanetSpace asserts that the SSA made a nonresponsibility finding when he "questioned whether PlanetSpace could successfully manage much larger subcontractors responsible for the majority of the performance under the contract." PlanetSpace Mem. 17 (quoting AR 5176). That characterization misstates the record.

17

████████████████████████████████

First, the notion that the SSA's proffer of a "question[]" to the SEB regarding PlanetSpace's proposed management approach "constituted a direct finding," PlanetSpace Mem. 17, is absurd.   By way of comparison, with regard to Orbital, which the SSA did select for award of one of the contracts, the SSA ████████████ ████████████████████████████████ ████████████████████████████████ ███████████████   AR 5174 (emphases added).   Those instances demonstrate that the SSA's mere "questioning" did not amount to a nonresponsibility determination because the SSA did award one of the contracts to Orbital.

Second, the SSA's evaluation of the management approach in PlanetSpace's proposal was appropriate because the RFP specifically required the SSA to evaluate each proposal's management approach and its attendant risks.   Management Approval factor, Element M1, titled "Company Information," provided: "NASA will evaluate the offeror's proposed management team for key positions; *the teaming arrangements* and completeness in meeting the key aspects of the SOW; and the *overall effectiveness and completeness of the management approach, plan, and processes*." AR 2091 (emphases added).  The RFP required NASA to evaluate this subfactor, along with all management subfactors, for "effectiveness, clarity, comprehension, feasibility, realism, suitability, risk and soundness." *Id.*

Moreover, the SSA's doubt about PlanetSpace's ability to manage large subcontractors was discussed in the Source Selection Statement in the context of

████████████████████████████

analyzing the "significant risk" associated with PlanetSpace's proposal to use large subcontractors on a cost-plus basis. AR 5176. PlanetSpace's proposal called for it to subcontract all of the technical aspects of the project to three very large subcontractors—Lockheed, ATK, and Boeing—under cost-plus subcontracts whereby PlanetSpace would bear the financial risk of any cost overruns by the subcontractors. Supp. AR 32232 (448:19-449:1), 31427 (820:9-13). Under this approach, nearly all of the early work would be done under cost-plus arrangements by subcontractors that have no incentive to control their costs. The risk to NASA with this proposal is that if the subcontractors were to exceed their budgeted costs by more than PlanetSpace's reserves to pay the excess, then PlanetSpace would likely default on the prime contract and NASA would be left without a contractor to provide the ISS resupply services. AR 31427 (820:14-822:15). The SSA believed the risks to NASA attendant with PlanetSpace's proposal were significant: ████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

AR 5176.

By contrast, these risks were not present in SpaceX's and Orbital's proposals, so the SSA evaluated PlanetSpace's management approach to see whether it would alleviate the risks associated with its cost-plus subcontracting and bring PlanetSpace's proposal more in line with the others. In order to effectively manage

19

large cost-plus subcontracts, a prime contractor must have a solid management team, strict cost controls, management experience and expertise, and significant financial reserves. The SSA concluded that PlanetSpace's Management Approach did not adequately address his concerns with the technical risks, relative to the other offerors, and he appropriately declined to select PlanetSpace's proposal, rather than determining that PlanetSpace was nonresponsible and ineligible for the contract award. *See* AR 5179-5180. It was proper for the SSA to do so, as evaluation of risks was specifically required by the RFP. *See* AR 2091 ("NASA will evaluate the offeror's understanding of the risks of providing the ISS resupply services, completeness in identifying risks, and the appropriateness of their mitigation plans."). The fact that the RFP required the SSA to evaluate criteria that happen to overlap with factors to be used in a responsibility determination does not transform the consideration of PlanetSpace's proposal in accord with the RFP criteria into a de facto finding of PlanetSpace's nonresponsibility; the two analyses are distinct. *See, e.g., Dynamic Aviation Helicopters*, 1996 WL 632673, at *2 ("An agency may use traditional responsibility factors, such as experience or past performance, as technical evaluation factors, where, as here, a comparative evaluation of those areas is to be made.").

          b.    *The SSA correctly compared PlanetSpace's past performance and technical skills with the other offerors*

PlanetSpace takes issue with the SSA's having "disregarded" the SEB's findings that PlanetSpace's proposal had significant strengths with regard to past performance and technical skills based on its proposed teaming approach with large

subcontractors, PlanetSpace Mem. 17, concluding that the subcontractors' past performance and technical skills were irrelevant to his evaluation of PlanetSpace's proposal.

But this argument proves too much. Even though performance record and technical experience are traditional responsibility factors, *see* 48 C.F.R. § 9.104-1(c), (e), and PlanetSpace argues that responsibility findings must be made by the SBA as to small business concerns, PlanetSpace's complaint here is not that the SSA considered these responsibility factors when he should have made an SBA referral, but that he *did not* consider them. PlanetSpace cannot have it both ways.

Moreover, the SSA never concluded that PlanetSpace lacked "sufficient" experience or performance history, as PlanetSpace wrongly states. PlanetSpace Mem. 17. The SSA simply determined that in evaluating PlanetSpace's past performance according to the RFP's requirements, *see* AR 2090, the experience of PlanetSpace's proposed subcontractors was "not relevant." AR 5175. The SSA never faulted PlanetSpace for lacking past history experience or disqualified PlanetSpace on this basis; instead, he followed the RFP's mandate that "an offeror without a record of relevant past performance . . . will not be evaluated favorably or unfavorably on past performance." AR 2090.

Nor did the SSA make a "finding" that PlanetSpace lacked the necessary technical skills and was therefore nonresponsible, as PlanetSpace claims. PlanetSpace Mem. 17-18. Instead, the SSA decided that two of the significant strengths that the SEB accorded PlanetSpace—for key personnel and

███████████████████████████████

subcontractors and for providing additional information on and augmenting its

teaming arrangement—did not make PlanetSpace's proposal more favorable to the

other proposals. AR 5176. Because ██████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████ that favored

PlanetSpace relative to its competitors. *Id,* That was an acceptable comparative

evaluation, not a pass/fail finding of nonresponsibility.

       c.    *The SSA correctly compared the financial risks to NASA*
              *associated with PlanetSpace's proposal with the risks*
              *associated with the other submissions*

      Finally, PlanetSpace misrepresents the record when it claims that the SSA

stated that the financial risk in PlanetSpace's proposal made PlanetSpace "likely to

fail" and thereby made a finding of nonresponsibility.  PlanetSpace Mem. 18.  The

SEB concluded that there would be significant financial risk to NASA if

PlanetSpace's proposal were to be selected, but the SEB scored this as a weakness

in PlanetSpace's proposal rather than a significant weakness.  AR 4725, 4760-4761,

5177.  The SSA disagreed that the "high financial risk to the Government"

embodied in PlanetSpace's proposal was merely a weakness.  But the SSA did not

make a pass/fail decision based on this risk or otherwise make any finding relating

to responsibility.  Nor did the SSA ever discuss or even look into the financial

resources of PlanetSpace *itself*, apart from the proposal.  Supp. AR 31137 (69:14-16).

Instead, the SSA decided that the risk associated with PlanetSpace's *proposal* was a

"discriminator for selection," AR 5177, meaning that it was a significant basis to

favor other proposals over PlanetSpace's.  Indeed, the GAO squarely addressed in

████████████████████

its protest decision PlanetSpace's argument that NASA's focus on financial risk was improper because it concerned responsibility, and the GAO found no merit in the argument. Supp. AR 31766. Because the consideration of the financial risks was a component of the comparative selection process and not part of a finding of nonresponsibility, it would have been inappropriate to make a referral to the SBA.

Moreover, the SSA was right to be concerned about the financial risks to NASA associated with PlanetSpace's proposal. In the Management Approach subfactor, the RFP directed the SSA to "evaluate . . . the overall risk that the [proposed] payment schedules provides to NASA." AR 2091. PlanetSpace's proposed payment schedule presented significant risks for NASA that did not exist in the other proposals. For example, PlanetSpace's proposal assumed that it would be able to complete ISS integration—the point at which hardware and software development would be complete and the flight operations plans would be approved by NASA, Supp. AR 31420 (792:1-8)—at an aggressively early date, ████████ prior to the first launch, AR 10607. Both the SEB and the SSA believed that date to be unrealistic. AR 4761, 5177; *see also* Supp. AR 31433 (847:9-13). That is significant because achievement of ISS integration is one of the early payment milestones in the RFP—the contractor may be paid no more than thirty percent until ISS integration is demonstrated, Supp. AR 31433 (847:3-8)—and if PlanetSpace were unable to meet the overly aggressive schedule its proposal had set for ISS integration, then its payment for meeting that milestone would likewise be pushed back and PlanetSpace would be forced to take on additional debt, Supp. AR 31436

23

████████████████████████████████

(852:3-853:9).  Combined with the fact that PlanetSpace's proposal did not project positive cumulative cash until nearly the end of the contract, AR 5177, the SSA was justified to be concerned that the likely delay in ISS integration and the cash shortage that would come from it might threaten the viability of the proposal.

### C. In The Alternative, No Referral To The SBA For A Responsibility Determination Was Required Because PlanetSpace Is Not A Small Business Under The "Ostensible Subcontractor" Rule

As PlanetSpace conceded in its complaint, PlanetSpace proposed to provide ISS resupply services through a "teaming approach" whereby it would subcontract out the entirety of the technical work to three large subcontractors: Lockheed Martin, ATK, and Boeing.  Compl. ¶ 34; Supp. AR 31758.  Indeed, PlanetSpace is itself such a small company that it could not possibly provide resupply services to the ISS without substantial assistance from such large subcontractors. PlanetSpace thus proposed that it would retain only the "contract and financial management tasks for itself" and would subcontract out the "design, development, production, and operation of space services."  Compl. ¶ 34.  But because of that teaming approach, under the "ostensible subcontractor" rule in the SBA's regulations PlanetSpace cannot be considered a small business concern for purposes of its proposal here because PlanetSpace and its subcontractors would be considered joint venturers and, as such, their gross receipts and employees would be combined for size-determination purposes.  Accordingly, PlanetSpace cannot meet its burden to prove it is a small business as alleged in its complaint, and no referral to the SBA

24

for a determination of responsibility would have been required or even appropriate.

Consequently, the Court should reject PlanetSpace's arguments as to Count I.

1.   *Under the "ostensible subcontractor" rule, a small business concern and its subcontractor must be aggregated together for size-determination purposes if the small business places unusual reliance on the subcontractor*

The SBA regulations provide that in determining a business's size, not only do the business's own gross receipts and employees count, but so do those of its affiliates: "In determining the concern's size, SBA counts the receipts, employees, or other measure of size of the concern whose size is at issue and all of its domestic and foreign affiliates, regardless of whether the affiliates are organized for profit." 13 C.F.R. § 121.103(a)(6). In general, "[c]oncerns and entities are affiliates of each other when one controls or has the power to control the other." *Id.* § 121.103(a)(1). Additionally, if an association of individuals or business concerns constitutes the definition of a "joint venture," then they will be considered affiliates and will be grouped together for purposes of determining size. *Id.* § 121.103(h).

The "ostensible subcontractor" rule is one way under which businesses—specifically, a prime contractor and its subcontractor—can be considered joint venturers. Under the rule, if a subcontractor is deemed an ostensible subcontractor, then the "contractor and its ostensible subcontractor are treated as joint venturers, and therefore affiliates, for size determination purposes." *Id.* § 121.103(h)(4). The purpose of the rule is to prevent firms that are not small from forming relationships with firms that are small in order to evade SBA's size requirements. *Size Appeal of TCE Inc.*, No. SIZ-5003, 2008 WL 4694573 (S.B.A. Sept. 24, 2008).

25

████████████████████████

A subcontractor is an ostensible subcontractor if the subcontractor "performs primary and vital requirements of a contract" or if it is "a subcontractor upon which the prime contractor is unusually reliant." 13 C.F.R. § 121.103(h)(4). In determining whether a subcontractor is an ostensible subcontractor, "[a]ll aspects of the relationship between the prime and subcontractor are considered." *Id.* The regulations enumerate a list of non-exhaustive factors that are to be considered: (1) "the terms of the proposal (such as contract management, technical responsibilities, and the percentage of subcontracted work)," (2) "agreements between the prime and subcontractor (such as bonding assistance or the teaming agreement)", and (3) "whether the subcontractor is the incumbent contractor and is ineligible to submit a proposal because it exceeds the applicable size standard for that solicitation." *Id.*

Although all aspects of the relationship must be considered—i.e., it is a totality-of-the-circumstances test—any single factor, if sufficiently strong, may be proof of unusual reliance and may support a finding of an ostensible subcontractor. *Size Appeal of Video Masters, Inc.*, No. SIZ-4984, 2008 WL 5192388 (S.B.A. Aug. 20, 2008). However, only the affiliation for the particular contract at issue, and not the status for future procurements, is considered in the ostensible-subcontractor test. *Id.*

In *Size Appeal of TKTM Corp.*, No. SIZ-4885, 2008 WL 541394 (S.B.A. Jan. 31, 2008), the SBA Office of Hearings and Appeals (OHA) held that a contractor was unusually reliant upon its subcontractor, and therefore the subcontractor was an ostensible subcontractor, based on the following facts: (1) the subcontractor had a

████████████████████████

significant role in preparing the contractor's bid, (2) the bid indicated that the subcontractor would perform approximately twenty-five percent of the work, (3) the contractor claimed that it had the ability to perform the work based on the subcontractor's "enormous capacity," (4) the contractor emphasized that it had access to the subcontractor's equipment and crews, and (5) the contractor would have primarily performed only the administrative functions of the contract, not the technical and mechanical functions.

And in *Size Appeal of Taylor Consultants, Inc.*, No. SIZ-4775, 2006 WL 1484895 (S.B.A. Apr. 7, 2006), the OHA concluded that a contractor was unusually reliant on its subcontractor based in large part on the contractor's small size relative to the size of the team that would be responsible for the project (the workforce was to be nine times larger than the contractor's current size) and the contract revenues (which would have been fifty times greater than the contractor's revenues to date). Due to the contractor's lack of experience in performing similar contracts, the OHA determined that the only reason the contractor could be qualified for the contract was based on the subcontractor's experience and resources. The OHA described these facts as "quintessential examples" of indicia of unusual reliance on a subcontractor.

> **2.** **Because PlanetSpace's proposal was to delegate all the technical elements of the contract to large subcontractors, PlanetSpace cannot be considered a small business concern for purposes of this solicitation**

Based on these factors, there can be no doubt that Lockheed, ATK, and Boeing are ostensible subcontractors of PlanetSpace. PlanetSpace proposed that if

███████████████████████

awarded the contract, it would subcontract out approximately 82% of the contract to these three subcontractors. AR 2600, 2606; Supp. AR 31758. This would include subcontracting out *all* the key technical elements of the resupply service. Compl. ¶ 34 ("PlanetSpace proposed . . . to subcontract design, development, production, and operation of space services . . . ."). PlanetSpace's proposal handed over responsibility to Lockheed for "program management, systems integration, the orbital transfer vehicle, integration and test, the avionic propulsion module, cargo return capsule, and mission operations." Supp. AR 31758; *see also* Compl. ¶ 34. The proposal called for Boeing to be responsible for "ISS integration, cargo carriers and cargo processing." AR 31758; *see also* Compl. ¶ 34. And PlanetSpace's proposal "assigned ATK responsibility for launch vehicle development and launch site operations." Supp. AR 31758; *see also* Compl. ¶ 34.

The only responsibilities that PlanetSpace would retain under the proposal were "prime contract execution, contract administration, financial management, and business operations." Supp. AR 31758. In other words, PlanetSpace would have kept only responsibilities that were inherent in any contracting business and that would have required no particular space-industry skill. Because the contract's "primary and vital requirements," 13 C.F.R. § 121.103(h)(4), are assigned to be performed by subcontractors, those subcontractors must be deemed affiliates of PlanetSpace.

In addition, the only way PlanetSpace could qualify to bid for the contract was to rely on the experience and expertise of its subcontractors, which is indicative

██████████████████

of unusual reliance.  PlanetSpace has no experience of its own in development, production, and operation of large, complex space systems.  *See* AR 4727, 5175. PlanetSpace relied on the credentials and experience of its subcontractors in order to establish its capability to perform the contract.

In sum, the Court should reject PlanetSpace's contention that referral to the SBA was required, because under the "ostensible subcontractor" rule PlanetSpace cannot meet its burden to prove that it is a small business as alleged in its complaint.  Therefore, PlanetSpace is not a small business concern that is entitled to the benefit of the SBA's COC process for the purposes of this solicitation.

## II.   THE SSA DID NOT CONSIDER FACTORS OTHER THAN THOSE ESTABLISHED IN THE RFP IN EVALUATING PLANETSPACE'S PROPOSAL (COUNT III)[1]

PlanetSpace's contention that the SSA went outside the bounds of the factors listed in the RFP when he considered PlanetSpace's proposal, in violation of 10 U.S.C. § 2305(b)(1) and 48 C.F.R. § 15.303(b)(4), is plainly wrong.

Although procuring agencies may not rely upon undisclosed selection criteria when performing an evaluation of competing proposals, agencies have "great discretion" in assessing the scope of the factors that were disclosed in the solicitation.  *Banknote Corp. of Am., Inc. v. United States*, 56 Fed. Cl. 377, 386 (2003) ("[A]n agency still has 'great discretion in determining the scope of an evaluation factor.'" (quoting *Forestry Surveys & Data v. United States*, 44 Fed. Cl. 493, 499 (1999))).

---

[1] Because Counts II and V of PlanetSpace's complaint pertain only to Orbital and not to SpaceX, those counts are not addressed here.

████████████████████████████████

Because of the broad discretion accorded to procuring agencies in evaluating the proposals according to the disclosed selection factors, PlanetSpace has the burden of showing that NASA "used a *significantly* different basis in evaluating the proposals than was disclosed." *Id.* at 387 (emphasis added).

PlanetSpace contends that the SSA departed from the criteria disclosed in the RFP by purportedly "decid[ing] that the PlanetSpace proposal (and not any of the other proposals) should have included a subcontractor back-up plan." PlanetSpace Mem. 22. This contention is wrong, because the RFP required the SSA to evaluate the subcontracting arrangements in the proposals and to consider the completeness of the management plans in the proposals.

As part of the Management Subfactor, the RFP provided that NASA would "evaluate the offeror's proposed management team for key positions; the *teaming arrangements* and completeness in meeting the key aspects of the SOW; and the *overall* effectiveness and *completeness of the management approach, plan, and processes.*" AR 2091 (emphases added). PlanetSpace's submission was unique in that it proposed to subcontract out the entirety of the technical elements of the contract, retaining only the contract administration and financial and management for PlanetSpace. Because PlanetSpace's proposal uniquely called for this "teaming approach," and the RFP disclosed that NASA would consider the teaming arrangements and the completeness of the proposal's management plan, it was not a departure from the RFP for the SSA to consider the risk of performance imposed by PlanetSpace's total reliance on its proposed subcontractors and whether

30

████████████████████████

PlanetSpace had put in place contingencies in case one or more of its subcontractors failed to timely perform the technical requirements.

At the very least, PlanetSpace has not met its burden to demonstrate that the SSA abused his broad discretion by making a *significant* departure from the RFP's selection criteria. *See BankNote Corp.*, 56 Fed. Cl. at 386. Accordingly, the Court should reject PlanetSpace's motion as to Count III.

### III. NASA PROPERLY EVALUATED PLANETSPACE'S PAST PERFORMANCE AS REQUIRED BY THE RFP SPECIFICATIONS (COUNT IV)

PlanetSpace misconstrues the SSA's evaluation of its past performance when it contends that the SSA's treatment was "unreasonable and contrary to the stated evaluation requirements." PlanetSpace Mem. 23. The RFP stated in no uncertain terms that the "offeror's past performance" would be evaluated as part of each Mission Suitability subfactor and that "[i]n the case of an offeror without a record of relevant past performance ... the offeror will not be evaluated favorably or unfavorably on past performance." AR 2090. Notwithstanding PlanetSpace's arguments to the contrary, the SSA carefully and appropriately evaluated PlanetSpace's past performance as required by these RFP specifications.

The thrust of PlanetSpace's complaint is that when the SSA evaluated the past performance of PlanetSpace and its subcontractors, he did not look solely to the past performance of the subcontractors but also considered whether PlanetSpace itself had any past performance. *See, e.g.*, PlanetSpace Mem. 26 (arguing that it was improper to consider whether PlanetSpace had any "corresponding strength" with the strength of its subcontractors' past performance). But the SSA was

required by the RFP to consider PlanetSpace's past performance and to ensure that PlanetSpace was not evaluated favorably or unfavorably if it had no such past performance. *See* AR 2090 ("In the case of an offeror without a record of relevant past performance . . . the offeror will not be evaluated favorably or unfavorably on past performance."). Not only did PlanetSpace lack past performance on the production and operation of complex space systems, it also lacked past performance on the management of teams consisting of large subcontractors that would be completely responsible for the technical aspects of the contract. Consequently, the SSA meticulously followed the RFP's dictate by ensuring both that PlanetSpace not be given "a negative evaluation because it had little or no Past Performance" and that it not be given a favorable evaluation but that instead the past performance be treated as "not relevant for purposes of selection." AR 5175; *see also* AR 5176

Indeed, GAO has consistently held that there is no requirement for an agency to credit or otherwise substitute a subcontractor's experience or past performance for a prime contractor that lacks past performance of its own. *IPlus, Inc.*, No. B-298020.2, 2006 CPD ¶ 90, 2006 WL 1702640, at *7 (Jun. 5, 2006). In fact, GAO remarked that there are instances where it would be inappropriate for an agency to give a prime contractor credit for its subcontractor's past performance or experience: "[f]or example, under a past performance criterion regarding management of

████████████████████████████

subcontractors, an agency cannot reasonably credit a small business protégé prime contractor with the past performance of its large business mentor subcontractor if the evaluation criterion is meant to measure the prime contractor's ability to supervise and control the subcontractor's performance." *Id.* at *7 n.8; *see also J.A. Farrington Janitorial Servs.*, B-296875, 2005 C.P.D. ¶ 187, 2005 WL 3005742, at *4 (Oct. 18, 2005) (finding nothing improper in the agency focusing on prime contractor's lack of past performance even where subcontractor has considerable positive past performance).

Thus, the GAO correctly rejected PlanetSpace's argument that NASA negatively evaluated PlanetSpace's proposal due to its lack of relevant past performance: "[I]n considering the SEB's assessment of significant strengths based on the past performance of PlanetSpace's subcontractors/team members, the SSA simply disagreed with the SEB's finding of a significant strength." Supp. AR 31762. "[T]he SSA determined only that the protestor's record of past performance should not be considered as a discriminator; he did not downgrade the proposal overall under the past performance factor." AR 31763.

Moreover, PlanetSpace's contention that it was arbitrary and capricious for the SSA to not have given weight to the past performance of PlanetSpace's key employees is off base. The only authority to which PlanetSpace can point that could require assessment of key employees is a suggestion on the web site of the Office of Federal Procurement Policy that sets forward certain "best practices." PlanetSpace Mem. 25.   PlanetSpace proffers no authority for the proposition that these

████████████

guidelines have the force of law.  Thus, even assuming arguendo that the SSA did not follow these guidelines, it could not have been an abuse of discretion or a violation of the law.

Finally, even if there were error in the SSA's assessment of PlanetSpace's past performance, it was harmless as to SpaceX's contract award, as PlanetSpace does not even argue that SpaceX would not have been awarded the contract had PlanetSpace's past performance been evaluated differently.  Instead, PlanetSpace argues only that "the SSA would have had no basis to select *Orbital's*" proposal. PlanetSpace Mem. 27 (emphasis added).

## IV.  THE SSA ARTICULATED A RATIONAL BASIS FOR ASSESSING THE FINANCIAL RISKS ASSOCIATED WITH PLANETSPACE'S PROPOSAL AS A SIGNIFICANT WEAKNESS AND A DISCRIMINATOR FOR SELECTION (COUNT VI)

PlanetSpace's argument that the SSA did not articulate a rational basis for assessing the risks associated with PlanetSpace's proposal, PlanetSpace Mem. 31-34, is in reality just an attempt to have this Court second guess NASA's judgment, and it should be rejected.

As discussed above, PlanetSpace proposed to enter into a fixed-price contract with NASA but to rely on cost-plus subcontracts, thereby taking on to itself the risks of cost overruns.  PlanetSpace's proposal also included an overly aggressive view (by at least 9 months) of when it would complete and be paid for ISS integration. This, combined with the fact that the estimated cash flow even without significant delays or cost overruns was not anticipated to turn positive until the last year of the contract, 2015, meant that there was a significant financial risk that

████████████████████████████████

PlanetSpace would not be able to perform the entire contract, which would place NASA in an untenable situation.

The SEB recognized this risk and scored it as a weakness in PlanetSpace's proposal. AR 4760-4761. Indeed, PlanetSpace's own proposal documented the significant risks associated with its proposed use of cost-plus subcontracts: "Given that PlanetSpace is a small company with a [fixed-price] NASA contract and with [cost-plus] development subcontracts awarded to Lockheed Martin and ATK it follows that lack of effective subcontract controls could result in significant schedule delays and cost over runs." AR 10581.

The SSA disagreed that the financial risk associated with PlanetSpace's proposal presented merely a weakness but instead scored it as a significant weakness and a discriminator for selection—i.e., a flaw that appreciably increases the risk of unsuccessful contract performance, 48 C.F.R. § 15.001. AR 5177-5178. The SSA documented in the Source Selection Statement why he made this finding:

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████ *Id.* The SSA also identified *new information* that came out during the deliberations, after the SEB made its findings: ████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

35

███████████████████████████████████████████

███████████████████████████████████████ *Id.*  This

more than adequately justified the SSA's decision to treat the financial risks as a

significant weakness and a discriminator.[2]

PlanetSpace nonetheless asks this Court to substitute its own judgment for

that of the SSA and to determine that the financial risks to NASA that would result

if PlanetSpace were awarded a contract are not as the SSA found them to be.  But

the SSA had "wide discretion" in evaluating the proposals and applying the

regulations, and consequently "the court cannot substitute its judgment for that of

the agency, even if reasonable minds could reach differing conclusions." *Computer*

*Scis. Corp. v. United States*, 51 Fed. Cl. 297, 306 (2002); *see also Overstreet Elec. Co.*

*v. United States*, 59 Fed. Cl. 99, 108 (2003) ("Procurement officials have substantial

discretion to determine which proposal represents the best value for the

government."); *WorldTravelService v. United States*, 49 Fed. Cl. 431, 442 (2001)

("Under the arbitrary and capricious standard, this court must uphold a

procurement decision so long as it has a rational basis.").  PlanetSpace "bears a

'heavy burden' of showing that the award decision 'had no rational basis.'"

*Computer Scis. Corp.*, 51 Fed. Cl. at 306 (quoting *Impresa Construzioni Geom.*

*Domenico Garufi v. United States*, 238 F.3d 1324, 1333 (Fed. Cir. 2001)).

---

[2] PlanetSpace complains that "[n]one of the weaknesses in Space-X's or
Orbital's bids were changed to 'significant' weaknesses by the SSA; only
PlanetSpace's scoring changed." PlanetSpace Mem. 32.  But PlanetSpace's proposal
to have a fixed-cost contract with NASA and rely upon cost-plus subcontracts was
unique.  PlanetSpace cannot show that it was not treated equally in the evaluation
of the proposals.

PlanetSpace made these same arguments about its financial risk before the GAO, but as the GAO pointed out, the SSA considered the proposal and simply "was not convinced." Supp. AR 31765. As the GAO concluded, PlanetSpace "has not shown that [the SSA's] conclusion [was] unreasonable or otherwise improper." Supp. AR 31766. Accordingly, PlanetSpace's arguments should be rejected.

## V.   PLANETSPACE IS NOT ENTITLED TO DECLARATORY OR INJUNCTIVE RELIEF

In no event should the Court award the declaratory or injunctive relief that PlanetSpace requests: (1) a declaration that NASA violated statutes and regulations in evaluating PlanetSpace's proposal and that those errors were prejudicial and (2) a permanent injunction remanding the procurement to NASA and requiring reprocurement of the ISS resupply services. *See* PlanetSpace Mem. 36-37; Compl. ¶¶ 114, 116. PlanetSpace is not entitled to this relief.

As a threshold matter, PlanetSpace is not entitled to declaratory or injunctive relief because, for all the reasons stated above and in the Government's brief, PlanetSpace cannot prevail on the merits. *See Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987) (to obtain permanent injunction, plaintiff must achieve "actual success" "on the merits").

But even if PlanetSpace could prevail on the merits, an injunction still must not issue. First, even if a plaintiff succeeds on the merits of a bid protest action, the Court is "not automatically require[d] . . . to set aside [the] arbitrary, capricious, or otherwise unlawful contract award." *PGBA, LLC v. United States*, 389 F.3d 1219, 1226 (Fed. Cir. 2004). Rather, the Court retains "equitable discretion [to] decid[e]

37

███████████████████████

whether injunctive relief is appropriate." *Id.* at 1225-1226.  In deciding whether a

permanent injunction should issue once the plaintiff has succeeded on the merits,

the Court must consider (1) whether the plaintiff will suffer irreparable harm if the

Court withholds injunctive relief, (2) whether the balance of hardships to the

respective parties favors the grant of an injunction, and (3) whether granting the

requested injunctive relief is in the public interest.  *Id.* at 1228-1229.

PlanetSpace's mainly generic arguments with regard to these factors are not

compelling.  Moreover, in determining whether to grant injunctive relief, this Court

must "give due regard to the interests of national defense and national security."  28

U.S.C. § 1491(b)(3).  The seven-year procurement at issue here—which is needed to

resupply the ISS during the period after the end of the Space Shuttle Program in

2010 but before the end of the ISS Program in 2015—impacts national security and

safety.  This procurement is vital to satisfy NASA's obligation under international

agreements to resupply the ISS with items that are critical to the safety of the

astronauts on board (e.g., air, water, food, and medicine) and to the successful

working and utility of the ISS itself (e.g., spare parts, equipment, and scientific

experiments).  Supp. AR 31756.  Although PlanetSpace downplays the potential for

delay that would result from a reprocurement here, the procurement is for services

that are set to begin *next year*, and any re-award of a contract to a different bidder

at this point—nine months after contract award and five months after the GAO

decision—would likely create severe delay that would place the safety and

usefulness of the ISS Program in jeopardy.

████████████████████████

In these circumstances, the degree of harm to NASA and the public interest weigh strongly against the injunctive relief that PlanetSpace seeks and in favor of permitting the contract awards to stand. *See, e.g.*, *Gentex Corp. v. United States*, 58 Fed. Cl. 634, 636 (2003) (despite violations of the FAR in the procurement process, denying injunctive relief "[b]ecause the public interest, in particular, the safety of our nation's aircrew, could be compromised by the delay in this procurement which would result from such an injunction").

## CONCLUSION

For the foregoing reasons, defendant-intervenor SpaceX respectfully requests that the Court deny PlanetSpace's motion for judgment on the administrative record and for permanent injunction, and enter judgment in favor of defendant or dismiss the complaint with prejudice.

Respectfully submitted,

Dated:  September 18, 2009

s/ RICHARD J. VACURA
   *Counsel of Record*
KERIC B. CHIN
MARC A. HEARRON
MORRISON & FOERSTER LLP
1650 Tysons Boulevard, Suite 400
McLean, Virginia  22102
Telephone: 703.760.7700
Facsimile: 703.760.7777
E-mail: RVacura@mofo.com

*Counsel for Defendant-Intervenor*
*Space Exploration Technologies*
*Corporation*

39

█████████████████████████

**CERTIFICATE OF FILING**

I hereby certify that on September 18, 2009, a copy of Defendant-Intervenor Space Exploration Technologies Corporation's Response To Plaintiff PlanetSpace Inc.'s Motion For Judgment On The Administrative Record And For Permanent Injunctive Relief And Cross-Motion For Judgment On The Administrative Record was filed electronically.  I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Dated: September 18, 2009                    s/ Richard J. Vacura

dc-572016