**REDACTED VERSION**

*Protected Information to Be Disclosed Only in Accordance
With the U.S. Court of Federal Claims Protective Order*

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
*Bid Protest*

| | |
|---|---|
| PlanetSpace Inc., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 09-476C |
| ) | Judge Block |
| v. ) | |
| ) | |
| United States of America, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| Space Exploration Technologies ) | |
| Corporation and Orbital Sciences ) | |
| Corporation, ) | |
| ) | |
| Defendant-Intervenors. ) | |
| ) | |

**SUPPLEMENTAL MEMORANDUM OF PLAINTIFF PLANETSPACE INC. IN RESPONSE TO THE DECLARATION OF THE SOURCE SELECTION AUTHORITY AND IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

In its April 6, 2010 decision, the Court held that "where responsibility-type concerns preclude a comparative or trade-off analysis, a *de-facto* non-responsibility determination has been made and, in the case of a small business, referral to the SBA is required." *PlanetSpace, Inc. v. United States*, No. 09-476C, __ Fed. Cl. __, 2010 WL 1783243 at *23-*25 (Fed. Cl. Apr. 6, 2010). Thus, "the key inquiry for the court in this case is whether responsibility concerns so permeated the SSA's decision that it cannot be said that the SSA performed a proper trade-off analysis at-all." *Id.* at *25.

After reviewing the SSA's Source Selection Statement ("SSS') and his testimony before the Government Accountability Office, the Court concluded that it was unable to divine

DC: 3606806-2

1

what the SSA was attempting to convey when he stated in the Source Selection Statement that he could not "conduct a 'typical' trade-off analysis." *Id*. at *19. The Court observed that "there is evidence suggesting that the SSA *may* have failed to perform a trade-off analysis altogether," as "[t]he SSA's decision arguably questioned plaintiff's ability to perform the proposed contract, not merely the soundness of the proposal itself." *Id.* at *23 (italics in original).

The Court stayed and remanded this case to NASA to allow the SSA to provide a sworn statement setting forth a "further explanation" of his decision not to "conduct a 'typical' trade-off analysis" and to "mak[e] explicit and unambiguous the trade-off analysis that he believed was implicit in his source selection decision." *Id.* at *19 & *28. The Court further provided that the parties would subsequently file memoranda addressing the implications of this sworn statement on PlanetSpace's pending claims, *see* May 10, 2010 Scheduling Order.

NASA subsequently filed a declaration by the SSA on May 3, 2010 (hereafter, the SSA Decl."). This declaration confirms that the agency did not conduct the required trade-off analysis and instead made an impermissible responsibility determination. The Court should enter judgment for PlanetSpace on Counts I and II, and remand this case to NASA with instructions to seek a certificate of competency from the SBA.

**I.    The New Declaration Is Not Consistent With The Agency's Procurement Record And Does Not Provide A Basis Upon Which The Court May Conclude That NASA Conducted A Proper Trade-Off Analysis.**

A post-protest explanation must be "credible and consistent with the contemporaneous record," simply filling in previously unrecorded details of contemporaneous conclusions. *Sayed Hamid Behbehani & Sons, WLL*, B- 288818.6, Sept. 9, 2002, 2002 CPD ¶ 163 at n.2 (citing *NWT, Inc.; PharmaChem Labs., Inc.*, B-280988, Dec. 17, 1998, 98-2 CPD ¶ 158 at 16); *accord Al Ghanim Combined Group Co. Gen. Trad. & Cont. W.L.L. v. United States*, 56 Fed. Cl. 502, 510-11 (2003) (refusing to allow the agency to supplement the record with

2

statements from a declaration that could not be "characterized as 'contemporaneous conclusions'" because there was "nothing in the record with which the court may harmonize them").

The SSA's declaration does not merely fill in previously unrecorded details. The SSA's declaration cannot be harmonized with his prior statements concerning the International Space Station Commercial Resupply Services ("ISS CRS") procurement.

The portion of the SSS addressing the SSA's purported "trade-off analysis" related to the contract award to Orbital rather than PlanetSpace consisted of three statements:

- "I concluded the proposal from Orbital was superior due to the serious Management risks inherent in the PlanetSpace proposal; however, I recognized PlanetSpace had a lower overall price than the Orbital proposal." SSS at 17, AR 5181.

- "I had reservations with regard to PlanetSpace's ability to successfully address the technical challenges associated with its proposal given the risks I identified in its Management approach." *Id.*

- "Although I recognized the evaluation criteria provided that Mission Suitability was more important than price, I could not conduct a 'typical' trade-off analysis since I believed there was a low likelihood PlanetSpace could successfully perform the contract." *Id.*

The Court observed that the first two of these statements, standing alone, *might* be considered parts of a cost-benefit analysis. *See PlanetSpace*, 2010 WL 1783243, at *22-*23. The Government in the new SSA declaration attempts to latch onto that observation, claiming that his concerns were related only to technical and management risks in PlanetSpace's proposal and not in PlanetSpace itself. *See, e.g.,* SSA Decl. at ¶¶ 11-13.

However, in order to advance that argument, the SSA purports simply to re-cast what were clearly statements regarding PlanetSpace's ability to carry out the contract (*i.e.*, responsibility evaluations) into statements regarding alleged deficiencies in PlanetSpace's proposal. Indeed, the Government attempts such a transmutation through the simple expedient of substituting the term "proposal" where the SSA had in the Source Selection Statement employed "PlanetSpace."

Thus, for example, where the Source Selection Statement provided: "I could not conduct a "typical" trade-off analysis since I believed there was a low likelihood *PlanetSpace* could successfully perform the contract" (SSS at 17, AR 5181, emphasis added), the SSA Decl. now provides at ¶ 13: "I consider this approach, in light of the overall complexity of technical activity, as creating a very high risk of not receiving a timely service from *this proposal.*" (emphasis added).

Similarly, where the Source Selection Statement provided: "Each of these [technical] challenges could be met if the *offeror* had a strong Management approach; however, I concluded the considerable risk inherent in *PlanetSpace's* Management approach made the likelihood of successful performance of this proposal remote" (SSS at 13, AR 5177, emphasis added), the SSA Decl. now provides at ¶ 12: "My review of the Management Plan in the PlanetSpace *proposal* contained [sic] revealed three weaknesses that I found significant for purposes of selection: …." (emphasis added).

Likewise, where the Source Selection Statement provided: "I questioned whether *PlanetSpace* could successfully manage much larger subcontractors responsible for the majority of the performance under the contract" (SSS at 12, AR 5176, emphasis added), the SSA Decl. now provides at ¶ 13: "The *proposal's* discussion of the management approaches and controls

used to control and manage under this arrangement [of cost-type subcontracts] was lacking. " (emphasis added).

This minor shift in phraseology cannot obscure that the SSA had made an impermissible responsibility determination in the SSS. The Government cannot simply excise the troublesome portions of its prior statements in order to arrive at a statement that it hopes can now pass muster. To do so is "quintessential post hoc rationalization." *Lion Raisins, Inc. v. United States*, 51 Fed. Cl. 238, 245-46 (2001). As such, the new declaration cannot reasonably be seen as "consistent" with the Source Selection Statement, and should not be given any weight.

Indeed, the SSA declaration does not even purport to address the myriad additional responsibility assessments contained in the Source Selection Statement, assessments that make clear that, in the words of this Court, "responsibility concerns so permeated the SSA's decision that it cannot be said that the SSA performed a proper trade-off analysis at-all." *PlanetSpace*, 2010 WL 1783243 at *25. PlanetSpace will mention here only a few examples:

- The Source Selection Statement provided that PlanetSpace did not have sufficient experience in "development, production, and operation of large, complex space systems." SSS at 11, AR 5175. This constituted a finding that PlanetSpace purportedly lacked "a satisfactory performance record," FAR § 9.104-1(c), and did not "[h]ave the necessary organization, experience, accounting and operational controls, and technical skills, or the ability to obtain them," FAR § 9.104-1(e). This finding is not discussed in the new SSA declaration.

- The Source Selection Statement provided: "I disagreed with the SEB assessment [of subcontractor past performance] that this finding was a significant strength. I determined the significance of this finding was offset by PlanetSpace's lack of experience in development, production and operation of large, complex space systems and, therefore,

concluded this finding was not relevant for purposes of selection." SSS at 11, AR 5175. This finding is not discussed in the new SSA declaration.

- In assessing Source Evaluation Board concerns regarding PlanetSpace's understanding of FAA licensing requirements for commercial launch and reentry operations, the SSA stated that "this finding was a discriminator because it demonstrated a lack of understanding about the basic requirements of the commercial nature of CRS." SSS at 13, AR 5177. This finding is clearly a finding about PlanetSpace's "competency," and not a risk inherent in the proposal itself.

The Government *does* attempt to address this issue in the new SSA declaration, which states that "PlanetSpace should have fully understood the licensing requirements imposed by the FAA and documented them clearly in the proposal. All the other offerors did this in their proposals." SSA Decl. at ¶ 12. But this characterization of the SSA's earlier reasoning simply confirms that this concern relates not to the "risk" of FAA licensing itself, but to PlanetSpace's capabilities to perform, and as such, its responsibility.

The Government has failed to provide any explanation how these statements do not concern responsibility, and *no* credible explanation for the SSA's statement in the SSS that he "*could not* conduct a 'typical' trade-off analysis since [he] believed there was a low likelihood PlanetSpace could successfully perform the contract." SSS at 17, AR 5181 (emphasis added). The SSA declaration does not explain his failure to conduct a proper trade-off analysis, other than the obvious explanation: that he did not conduct a trade-off analysis because he purportedly did not believe PlanetSpace could perform the contract, a classic responsibility determination. *See* PlanetSpace Aug. 28, 2009 Mem. at 12-16 (the likelihood of PlanetSpace's successful performance goes to the heart of PlanetSpace's "responsibility," *i.e.*, its "ability and capacity to

perform" the contract requirements, *Fabritech Inc.*, B-298247, July 27, 2006, 2006 CPD ¶ 112 at 3).

II. **The New Declaration Does Not Excuse The Agency's Violation Of The NASA FAR Supplement, Nor Does It Provide An Adequate Explanation For the SSA's Review Of, And Apparent Reliance On, The Information Gathered Through The Pre-Award Survey.**

As the Court stated in its April 6 remand order, "[c]oncerns about a *de facto* non-responsibility determination are heightened in this instance, due to the agency's mishandling of the pre-award survey of the offerors." *PlanetSpace*, 2010 WL 1783243, at *25. The Court explained that a member of NASA's Pre-Award Survey team sent an e-mail to the SSA on December 11 with a draft of the final Pre-Award Survey report attached, and "explicitly invited the SSA to consider the attached draft when evaluating the offeror's proposals." *Id.* Of particular significance was the report's conclusion that PlanetSpace XXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX, and "could not meet the responsibility standards laid out at FAR § 9.104-1." *Id.*

In an attempt to respond to the Court's concerns and this apparent patent violation of NASA FAR Supplement § 1809.106-1 and § 1809.106-70,[1] the Government includes a paragraph in the SSA's declaration in which he acknowledges receiving the Pre-Award Survey report four days prior to the SEB's final presentation, but simply avers that he "did not consider or rely on any of its contents in making [his] selection decisions." SSA Decl. at ¶ 15.

---

[1]   NASA FAR Supplement § 1809.106-1 provides that Pre-Award Surveys are to be "used only to assist the contracting officer to make determinations of responsibility under FAR 9.104 . . . [and] [t]hey are *not* to be used to obtain information useful to proposal evaluation that does not directly relate to the responsibility determination" (emphasis added).  NASA FAR Supplement § 1809.106-70 further provides that "[i]nformation obtained during the survey will be treated in strict confidence and divulged only to those Government representatives having a need to know."

In the context of the other available evidence, this bare statement is insufficient to quell the heightened concerns expressed by the Court, or demonstrate that the evaluation and assessment of PlanetSpace was not influenced by the information gathered through the Pre-Award Survey.

The Pre-Award Survey report concerning the responsibility of PlanetSpace and the two other offerors was forwarded to the SSA by a member of the Survey team for the stated purpose of allowing him "to get a feel for the performance risk of each of the potential providers." Dec. 11, 2008 E-mail from K. Lueders to W. SSA, AR 16683 (transmitting AR 2596-619). This act was a clear violation of the NASA FAR Supplement, which provides that Pre-Award Survey information is to be used "only to assist the contracting officer to make determinations of responsibility under FAR 9.104," and not for proposal evaluation. NASA FAR Supplement § 1809.106-1; *see also id.* § 1809.106-70.

As the Court correctly observed, the Pre-Award Survey report concluded that two of the three offerors either had or could obtain the financial resources necessary to perform the contract. *PlanetSpace*, 2010 WL 1783243, at *25. The only "performance risk" identified in the report concerned the responsibility of PlanetSpace, concluding that XXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXX.

Moreover, the SSA's new declaration fails to address a second e-mail that was sent to him on December 8, three days before he improperly received a copy of the Pre-Award Survey report, in which another NASA official describes the findings of the Pre-Award Survey with respect to purported flaws in the financial plan submitted by PlanetSpace. *See* Dec. 8, 2008

E-mail from A. Lindenmoyer to W. SSA, AR 20047.  The SSA replied to this e-mail the next morning, indicating that he understood the information being shared with him.  *See* Dec. 9, 2008 E-mail from W. SSA to A. Lindenmoyer, AR 20047 ("Thanks, I think I understand….").  The December 8 and 11 e-mails reflect a keen awareness on the part of the SSA of the Pre-Award Survey ordered by the contracting officer, and the Survey team's specific concerns regarding PlanetSpace's ability to meet the responsibility standards set forth in FAR Part 9.  *See* AR 2600-01, 16683 & 20047.

Standing alone, these facts would create the reasonable inference that the SSA's selection decision, which was accompanied by a Source Selection Statement that was rife with concerns about PlanetSpace's ability to perform the ISS CRS contract, was impermissibly infected with information about the company's responsibility from the Pre-Award Survey.  That inference becomes well-nigh inescapable once one compares the content of the Source Selection Statement to the information gathered through the Pre-Award Survey.

In particular, the SSA's concerns about PlanetSpace's purported financial risks and its business case if NASA decided not to order the initial Atlas 511 mission appear to be drawn directly from the Pre-Award Survey report that was forwarded to the SSA on December 11.  The Source Selection Statement provides:  "PlanetSpace would be making a considerable investment in the program with two different launch vehicles, yet did not project it would reflect positive cumulative cash from operations until nearly the end of the contract….  While not ordering the alternate launch vehicle would reduce PlanetSpace's overall cost, this action also would cause the NASA payments to PlanetSpace to occur later, further threatening this business case."  SSS at 13, AR 5177.  PlanetSpace presented this precise information about its business case to the Pre-Award Survey team on December 10, 2010 (*see* AR 2572-73), and this

9

information was then reflected in the Pre-Award Survey report that was presented to the SSA the next day: "[T]he business case would not close until XXXX without NASA purchasing an Atlas launch earlier in the launch schedule…." AR 2609.

\* \* \*

Because the Government's latest attempt to construct a formal trade-off analysis between the Orbital and PlanetSpace proposals fails to comport with the existing administrative record and because the court may not infer such analysis, *PlanetSpace*, 2010 WL 1783243, at *28, the Court should enter judgment for PlanetSpace on Counts I and II, and remand this case to NASA to seek a certificate of competency from the SBA.

        Respectfully submitted,

        s/ Steven J. Rosenbaum
        Steven J. Rosenbaum
        *Counsel of Record*
        Scott A. Freling
        Covington & Burling LLP
        1201 Pennsylvania Avenue, N.W.
        Washington, D.C. 20044
        (202) 662-5568
        (202) 778-5568 fax
        srosenbaum@cov.com

June 14, 2010        *Counsel for Plaintiff PlanetSpace Inc.*