**PUBLIC VERSION**

### IN THE UNITED STATES COURT OF FEDERAL CLAIMS
*Bid Protest*

| | |
|---|---|
| PlanetSpace Inc., | ) |
| Plaintiff, | ) |
| | ) No. 09-476C |
| | ) Judge Block |
| v. | ) |
| United States of America, | ) |
| Defendant, | ) |
| Space Exploration Technologies Corporation and Orbital Sciences Corporation, | ) |
| Defendant-Intervenors | ) |

**MOTION FOR LEAVE TO FILE SUPPLEMENTAL PLEADING TO INFORM THE COURT OF DEVELOPMENTS BEARING ON THE PUBLIC INTEREST AND TO PLAINTIFF'S REQUEST FOR INJUNCTIVE RELIEF**

Pursuant to Rule 15(d) of the Rules of the United States Court of Federal Claims, PlanetSpace moves for leave to file this supplemental pleading to inform the Court of recent developments relating to NASA's International Space Station resupply activities, which are relevant to the "public interest" component of PlanetSpace's request for injunctive relief. *See, e.g., Totolo/King v. United States*, 87 Fed. Cl. 680, 693 (2009).

Today, October 11, 2010, the President of the United States signed into law the National Aeronautics and Space Administration Authorization Act of 2010, S.3729 (the "NASA Authorization Act").[1]  The NASA Authorization Act makes several important changes to

---
[1] A copy of the NASA Authorization Act is attached hereto as Exhibit 1.

- 1 -

NASA's mission, which further underscore the public interest in correcting the violations of legal and regulatory requirements that occurred during NASA's International Space Station Commercial Resupply Services procurement.  In particular, the NASA Authorization Act extends the life of the International Space Station from 2016 until at least 2020, and increases NASA's dependence on the commercial space transportation industry as the primary means of shuttling cargo and crew to and from the International Space Station.

Under the NASA Authorization Act, the Space Shuttle, NASA's primary means of servicing the International Space Station, will be retired around the middle of 2011.  While the NASA Authorization Act directs NASA to begin development of a heavy-lift rocket for future missions to regions of space beyond low-Earth orbit and as a "backup system" for supporting International Space Station operations, it cancels NASA's development of a low-Earth orbit rocket to service the International Space Station and to fill the void left by the Shuttle's retirement.

As a consequence, commercial space providers will now be expected to deliver cargo to and from the International Space Station for at least the next nine years, through 2020.[2]  Importantly, this stretch-out of the International Space Station program gives NASA the right under the Commercial Resupply Services contracts at issue in this proceeding to change the completion and/or delivery dates of the commercial transport missions.[3]  And, under any

---

[2]   Indeed, NASA and its International Space Station partner agencies are considering an extension of International Space Station operations through 2028.  *See* Chris Bergin, "ISS partners asked to assess Station extension to 2025 – potentially 2028," NASA Space Flight.com (July 8, 2010), *available at* http://www.nasaspaceflight.com/2010/07/iss-partners-assess-extension-2025-potentially-2028.

[3]   This applies to both the "standard" contract as descried in the request for proposals, *see* AR 1943-44 ("The Contracting Officer may at any time, by written order, and without notice to the sureties, if any, make changes within the general scope of this contract in any one or more

circumstance, NASA will need to order additional transport missions to continue International Space Station operations through 2020, as the existing orders were designed to serve NASA's requirements through 2015.[4]

Recognizing this greater reliance on commercial space providers, the NASA Authorization Act authorizes Congress to appropriate an additional $1.3 billion over the next three years to commercial space, including manned launch services.  *See* NASA Authorization Act §§ 101(1)(E), 102(1)(E), & 103(1)(E).  This figure is in addition to the nearly $8.9 billion that is authorized for appropriation over the next three years for the International Space Station program, including crew and cargo support.  *Id*. §§ 101(2)(A), 102(2)(A), & 103(2)(A).

The NASA Authorization Act thus expands the long-term relationship between the federal government and commercial space launch providers, and makes it more essential than ever to the public interest that NASA's initial selection of International Space Station Commercial Resupply Services contractors comport with law and regulation.  Failure to do so has the potential to stunt the development of the now even more critical commercial space industry, and endanger program success.

Moreover, one of the principal objections to injunctive relief raised by the Government has been eliminated through the NASA Authorization Act.  The Government contended that should PlanetSpace be awarded a contract as a result of remand, it was "extremely

---

of the following:  . . . (7) Completion dates or delivery dates related to the ISS Program as a result of stretch-out or acceleration of the ISS Program."), and to the actual contracts entered with Space-X and Orbital, *see* AR 5811, 6196 ("The Contracting Officer may at any time, by written order, and without notice to the sureties, if any, make changes within the general scope of this contract in any one or more of the following:  . . . (7) Completion dates or delivery dates related to the ISS Program as a result of stretch-out or acceleration of the ISS Program.").

[4]     *See* AR 91 & 1499.

doubtful" that it could provide these services by the scheduled completion dates.[5] Even assuming that position was previously correct,[6] and even ignoring the serious questions surrounding the awardees' own ability to meet scheduled completion dates,[7] which the Government itself acknowledges,[8] those scheduled completion dates were bounded by NASA's expectation that the International Space Station would cease operations in 2016.

The NASA Authorization Act removes this constraint, and extends NASA's requirements for commercial cargo transportation by at least four additional years. As noted on page 2 & n. 3 *supra*, NASA would be free on remand to address delivery dates to comport with the new realities if the agency were to determine that PlanetSpace is entitled either to displace one of the incumbent contractors or be granted a third award. Likewise, Congress' commitment in the NASA Authorization Act to appropriate even more money to commercial space programs leaves little doubt that money would be available for such a third award. For example, the NASA

---

[5] *See* Sept. 25, 2009 Defendant's Response to Plaintiff's Motion for Judgment Upon the Administrative Record, and Cross Motion for Judgment Upon the Administrative Record ("Def. Response"), at 47.

[6] *But see* Sept. 3, 2009 Memorandum in Support of Plaintiff's Motion for Judgment on the Administrative Record and for Permanent Injunctive Relief, at 40-42; Oct. 8, 2009 Combined Reply Memorandum in Support of Plaintiff PlanetSpace Inc.'s Motion for Judgment on the Administrative Record and for Permanent Injunctive Relief, and in Opposition to the Government's and Intervenor's Cross Motions, at 28.

[7] *See* Amy Klamper, "SpaceX Now Aims for November Launch of Dragon Space Capsule," Space News (Sept. 23, 2010), *available at* http://www.space.com/missionlaunches/ spacex-dragon-spaceship-november-launch-100923.html (reporting that SpaceX's demonstration flight for the Falcon 9 rocket and Dragon cargo vessel, which was initially scheduled to occur in September 2008 and later re-scheduled for June 2009, has now been postponed to November 2010); Meeting Minutes of the Commercial Space Committee of the NASA Advisory Council (Apr. 26, 2010), *available at* http://www.nasa.gov/pdf/453605main_Commercial_Space_ Minutes_4_26_2010.pdf ("The language should reflect that Space X has passed critical design review, is further along than Orbital, and that both are behind their original milestones.").

[8] *See* Def. Response at 47.

Authorization Act authorizes Congress to add $300 million for commercial cargo activities in 2011 alone.  *Id.* § 101(1)(E).  All large commercial cargo contract activities to date have been fixed price, and thus this is presumably additional money for new cargo activities.

Accordingly, PlanetSpace respectfully submits that if, as PlanetSpace urges, the Court concludes that there were improprieties in NASA's International Space Station Commercial Resupply Services procurement, the public interest more than ever demands that the Court remand the matter to the agency to correct these improprieties.  *See Wackenhut Servs., Inc. v. United States*, 85 Fed. Cl. 273 (2008) (public interest is served by reprocurement).

Respectfully submitted,

s/ Steven J. Rosenbaum
Steven J. Rosenbaum
*Counsel of Record*
Scott A. Freling
Covington & Burling LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C.  20044
(202) 662-5568
(202) 778-5568 fax
srosenbaum@cov.com

October 11, 2010                *Counsel for Plaintiff PlanetSpace Inc.*